1  GORDON C. YOUNG, CASB NO. 158100
   Gordon.Young@kyl.com
2  JULIE A. KOLE, CASB NO. 203681
   Julie.kole@kyl.com
3  ANNE MORIARTY, CASB No. 251803
   Annie.moriarty@kyl.com
4  KEESAL, YOUNG & LOGAN
   A Professional Corporation
5  Four Embarcadero Center, Suite 1500
   San Francisco, California 94111
6  Telephone:   (415) 398-6000
   Facsimile:   (415) 981-0136
7  Attorneys for Defendant
   PIPER JAFFRAY & CO.
8

**ORIGINAL FILED**

JUN - 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9               UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11

12  CHARLES JASON MORAN,                **CV  08      3188**

13                        Plaintiff,    )  Case No.
                                        )
14            vs.                       )
                                        )  **DECLARATION OF ANNE**
15  PIPER JAFFRAY & CO., d/b/a PIPER    )  **MORIARTY IN SUPPORT OF**
    JAFFRAY,                            )  **REMOVAL OF CIVIL ACTION**
16  Defendant.                          )
                                        )
17                                      )
                                        )
18                                      )
                                        )
19  _____    )

20  I, ANNE MORIARTY declare as follows:

21       1.    I am an attorney at law licensed to practice before this Court and

22  employed by the law firm Keesal, Young & Logan, attorneys for Defendant PIPER

23  JAFFRAY & CO., d/b/a PIPER JAFFRAY in this matter.  I have personal

24  knowledge of the facts set forth below and, if called upon to testify as a witness,

25  could testify competently thereto.

26

- 1 -                                    KYL_SF463478
DECLARATION OF ANNE MORIARTY IN SUPPORT OF REMOVAL OF CIVIL ACTION

2.      This Declaration is submitted in support of Defendant's Notice of Removal of Civil Action.

3.      True and correct copies of the Summons for Defendant and the Complaint from <u>Charles Jason Moran v. Piper Jaffray & Co., d/b/a Piper Jaffray</u>, Case No. CGC 08-476490, (the "Removed Action") are attached hereto as <u>Exhibit 1</u>.

4.      A true and correct copy of a Blank Case Management Statement is attached hereto as <u>Exhibit 2</u>.

5.      A true and correct copy of the Alternative Dispute Resolution Packet is attached hereto as <u>Exhibit 3</u>.

6.      A true and correct copy of Notice to Plaintiff is attached hereto as <u>Exhibit 4</u>.

7.      A true and correct copy of Plaintiff's Notice of Motion for Preliminary Injunction is attached hereto as <u>Exhibit 5</u>.

8.      A true and correct copy of Plaintiff's Motion for Preliminary Injunction is attached hereto as <u>Exhibit 6</u>.

9.      A true and correct copy of Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction is attached hereto as <u>Exhibit 7</u>.

10.     A true and correct copy of the Declaration of Charles Jason Mason In Support of Motion For Preliminary Injunction is attached hereto as <u>Exhibit 8</u>.

11.     A true and correct copy of Plaintiff's First Amended Notice of Motion For Preliminary Injunction is attached hereto as <u>Exhibit 9</u>.

12.     A true and correct copy of the Proof of Service of Summons is attached hereto as <u>Exhibit 10</u>.

KYL_SF463478

DECLARATION OF ANNE MORIARTY IN SUPPORT OF REMOVAL OF CIVIL ACTION

1      13.    A true and correct copy of Defendant's Answer is attached hereto as

2  Exhibit 11.

3      14.    Exhibits 1 through 11 of this declaration constitute all of the process,

4  pleadings and orders served upon Defendant in the above entitled action.

5      15.    A true and correct copy of the Notice To Clerk Of The Superior Court

6  Of Filing Of Removal And Removal Of Civil Action To Federal Court is attached

7  hereto as Exhibit 12.

8      16.    A true and correct copy of the Notice To Adverse Party Of Removal To

9  Federal Court is attached hereto as Exhibit 13.

10

11

12      Executed this 2nd day of July, 2008 at San Francisco, California.

13      I declare under penalty of perjury under the laws of the United States and

14  the laws of California that the foregoing is true and correct.

15

16                        ANNE MORIARTY

17

18

19

20

21

22

23

24

25

26

KYL_SF463478

DECLARATION OF ANNE MORIARTY IN SUPPORT OF REMOVAL OF CIVIL ACTION

Exhibit 1

*3255-116 p* (handwritten)

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):** Piper Jaffray + Co.
d/b/a Piper Jaffray

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** Charles Jason Moran

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.   There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.   If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.   Una carta o una llamada telefónica no lo protegen.   Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.   Es posible que haya un formulario que usted pueda usar para su respuesta.   Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is: Superior Court of California
(El nombre y dirección de la corte es:) County of San Francisco
400 McAllister
San Francisco, CA 94109

**CASE NUMBER:**
**(Número del Caso):** CGC-08-476490

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Matthew Helland, Nichols Kaster + Anderson, One Embarcadero Ctr., Ste 720
San Francisco, CA 94111

DATE: 6/19/08     GORDON PARK-LI    Clerk, by _____ D. STEPPE ____, Deputy
(Fecha)                    (Secretario)                    (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

| [SEAL] | 1. ☐ as an individual defendant. |
|---|---|
| | 2. ☐ as the person sued under the fictitious name of (specify): |
| | 3. ☐ on behalf of (specify): |
| | under: ☐ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor) |
| | ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee) |
| | ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person) |
| | ☐ other (specify): |
| | 4. ☐ by personal delivery on (date): |

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

6/19/08 (handwritten)

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Matthew C. Helland, Nichols Kaster & Anderson, SBN 240451
One Embarcadero Center Suite 720, San Francisco, CA 94111

TELEPHONE NO: 415-277-7235    FAX NO: 415-277-7238
ATTORNEY FOR (Name): Matthew C. Helland

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

**FOR COURT USE ONLY**

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JUN 19 2008

GORDON PARK-LI, Clerk
BY: DEBORAH STEPPE
Deputy Clerk

CASE NAME:
Charles Jason Moran v. Piper Jaffray & Co., d/b/a/ Pipper Jaffray

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☐ Unlimited (Amount demanded exceeds $25,000) ☑ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CGC-08-476490 |
| | | JUDGE: |
| | | DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☑ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☐ monetary    b. ☑ nonmonetary; declaratory or injunctive relief    c. ☐ punitive
4. Number of causes of action (specify): One
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 6/19/2008
Matthew C. Helland
_____
(TYPE OR PRINT NAME)    ►_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
  Defamation (e.g., slander, libel) (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JUN 1 9 2008

GORDON PARK-LI, Clerk
BY: _____ DEBORAH STEPPE
Deputy Clerk

NICHOLS KASTER & ANDERSON LLP
Matthew C. Helland, CA State Bar No. 250451
Helland@nka.com
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

NICHOLS KASTER & ANDERSON, PLLP
James H. Kaster, CA State Bar No. 248949
kaster@nka.com
4600 IDS Center, 80 S. 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

Attorneys for Plaintiff

CASE MANAGEMENT CONFERENCE SET

OCT 1 7 2008 - 10:30 AM

DEPARTMENT 212

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| Charles Jason Moran, <br><br> Plaintiff, <br><br> v. <br><br> Piper Jaffray & Co., <br> d/b/a Piper Jaffray, <br><br> Defendant. | CASE NO: CGC-08-476490 <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** |

1     Plaintiff, by his attorneys Nichols Kaster & Anderson, brings this action against Defendant for

2     declaratory relief. Plaintiff states the following as his claims against Defendant:

3 **PARTIES**

4      1.      Plaintiff Charles Jason Moran ("Moran") is an individual who resides in San

5     Francisco, California (San Francisco County) where he was employed by Piper Jaffray & Co.,

6     d/b/a Piper Jaffray.

7      2.      Defendant Piper Jaffray & Co., d/b/a Piper Jaffray ("Piper Jaffray") is a Delaware

8     corporation doing business in California, including in San Francisco.

9 **FACTS**

10      3.      Moran began working for Piper Jaffray in San Francisco, California as an

11     investment banker on or about April 19, 1999.

12      4.      As a part of his compensation with Piper Jaffray, Moran received restricted shares

13     of Piper Jaffray stock. In conjunction with receipt of that stock, Moran entered into Restrictive

14     Stock Agreements.

15      5.      Moran received a grant of stock in 2006. He entered into a Restrictive Stock

16     Agreement in connection with that grant ("the 2006 Agreement"). A true and correct copy of that

17     agreement is attached hereto as Exhibit A.

18      6.      Moran received subsequent grants of stock in 2007 and 2008, entering into

19     Restrictive Stock Agreements each year ("the 2007 Agreement" and "the 2008 Agreement,"

20     collectively with the 2006 Agreement, "The Agreements"). The 2007 and 2008 Agreements

21     varied slightly from the 2006 Agreement. True and correct copies of the 2007 and 2008

22     Agreements are attached hereto as Exhibits B and C, respectively.

23      7.      The Agreements explain how and when employee stock shares will vest and the

24     restrictions accompanying the shares.

25      8.      The 2006 Agreement contains a non-compete agreement and a non-solicitation

26     agreement giving Piper Jaffray the right to cancel Moran's shares if violated.

27      9.      The 2007 and 2008 Agreements dictate that, upon leaving the company, Moran is

28     required to sign a Post-Termination Agreement with Piper Jaffray in order to prevent his

-2-

**COMPLAINT**

1   restricted stock shares from forfeiting (the "Contemplated Post-Termination Agreement"). The

2   Contemplated Post-Termination Agreement includes a non-compete provision and a non-

3   solicitation provision.

4         10.    Both the non-compete provision in the 2006 Agreement, and the Contemplated

5   Post-Termination Agreement in the 2007 and 2008 Agreements, would prevent Moran from

6   engaging in a lawful profession, namely, his field of investment banking.

7         11.    Moran's employment with Piper Jaffray ended on April 14, 2008.

8         12.    Moran has not signed a Post-Termination Agreement with Piper Jaffray.

9         13.    Upon information and belief, Piper Jaffray has not yet exercised its purported right

10   under the Agreements to forfeit Moran's restricted shares.

11                                      **COUNT 1**

12                  **Declaratory Relief pursuant to Cal. Code Civ. Proc. § 1060**

13         14.    By reference hereto, Plaintiff incorporates Paragraphs 1 through 13 of his

14   Complaint.

15         15.    Cal. Bus. Prof. Code § 16600 declares that: "every contract by which anyone is

16   restrained from engaging in a lawful profession, trade, or business of any kind is to that extent

17   void."

18         16.    Sections 2(d)(iii) and 2(d)(iv) of the 2007 and 2008 Agreements, and Sections

19   2(c)(ii), 2(c)(iii) and 2(c)(v) of the 2006 Agreement, violate Cal. Bus. Prof. Code § 16600

20   because they allow Defendant to forfeit Plaintiff's stocks if he accepts employment within his

21   field and/or solicits Defendant's current or former clients, thereby placing an unlawful restraint

22   on Plaintiff's ability to engage in a lawful profession. Under Cal. Civ. Proc. Code § 1060,

23   Plaintiff is entitled to a declaration that these agreements are void and unenforceable under

24   California Law.

25                                 **PRAYER FOR RELIEF**

26         WHEREFORE, Plaintiff Charles Jason Moran prays for judgment against Defendant Piper

27   Jaffray as follows:

28         1.    For a declaratory judgment pursuant to Cal. Code Civ. Proc. § 1060 that Sections

**COMPLAINT**

1   2(d)(iii) and 2(d)(iv) of the 2007 and 2008 Agreements and Sections 2(c)(ii), 2(c)(iii), and 2(c)(v)

2   of the 2006 Agreement are void under Cal. Bus. Prof. Code § 16600; and

3       2.      For such other and further relief, in law or equity, as this Court may deem

4   appropriate and just.

6   Dated: 6/18/2008                        NICHOLS KASTER & ANDERSON, LLP

7                                           By:  _____

8                                                Matthew C. Helland

9                                           NICHOLS KASTER & ANDERSON, PLLP
                                            Attorneys for Plaintiffs and the Putative Class
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

**COMPLAINT**

1

**EXHIBIT INDEX**

2

3  **Exhibit A**..................................................................2006 Restricted Stock Agreement

4  **Exhibit B**..................................................................2007 Restricted Stock Agreement

5  **Exhibit C**..................................................................2008 Restricted Stock Agreement

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A

PIPER JAFFRAY COMPANIES
AMENDED AND RESTATED
2003 ANNUAL AND LONG-TERM INCENTIVE PLAN


RESTRICTED STOCK AGREEMENT
(Annual Grant)

| Name of Employee:   Charles J Moran | |
|---|---|
| No. of Shares Covered:      1,862 | Date of Issuance:      02/21/06 |

Vesting Schedule pursuant to Section 2:

| Vesting Date(s) | No. of Shares Which Become Vested as of Such Date |
|---|---|
| 02/21/09 | |

This is a Restricted Stock Agreement ("Agreement") between Piper Jaffray Companies, a Delaware corporation (the "Company"), and the above-named employee of the Company (the "Employee").

Recitals

WHEREAS, the Company maintains the Piper Jaffray Companies Amended and Restated 2003 Annual and Long-Term Incentive Plan, as amended from time to time (the "Plan");

WHEREAS, the Board of Directors of the Company has appointed the Compensation Committee (the "Committee") with the authority to determine the awards to be granted under the Plan; and

WHEREAS, the Committee or its delegee has determined that the Employee is eligible to receive an award under the Plan in the form of restricted stock and has set the terms thereof;

NOW, THEREFORE, the Company hereby grants this award to the Employee under the terms set by the Committee as follows.

EXHIBIT _____ 

1

Terms and Conditions*

1.    Grant of Restricted Stock.

(a)    Subject to the terms and conditions of this Agreement, the Company has granted to the Employee the number of Shares specified at the beginning of this Agreement. These Shares are subject to the restrictions provided for in this Agreement and are referred to collectively as the "Restricted Shares" and each as a "Restricted Share."

(b)    The Restricted Shares will be evidenced by a book entry made in the records of the Company's transfer agent in the name of the Employee (unless the Employee requests a certificate evidencing the Restricted Shares). All restrictions provided for in this Agreement will apply to each Restricted Share and to any other securities distributed with respect to that Restricted Share. Unless otherwise permitted by the Committee in accordance with the terms of the Plan, the Restricted Shares may not (until such Restricted Shares have vested in the Employee in accordance with all terms and conditions of this Agreement) be assigned or transferred other than by will or the laws of descent and distribution and shall not be subject to pledge, hypothecation, execution, attachment or similar process. Each Restricted Share will remain restricted and subject to forfeiture to the Company unless and until that Restricted Share has vested in the Employee in accordance with all of the terms and conditions of this Agreement. Each book entry (or stock certificate if requested by the Employee) evidencing any Restricted Share may contain such notations or legends and stock transfer instructions or limitations as may be determined or authorized by the Company in its sole discretion. If a certificate evidencing any Restricted Share is requested by the Employee, the Company may, in its sole discretion, retain custody of any such certificate throughout the period during which any restrictions are in effect and require, as a condition to issuing any such certificate, that the Employee tender to the Company a stock power duly executed in blank relating to such custody.

2.    Vesting.

(a)    If the Employee remains continuously employed (including during the continuance of any leave of absence approved by the Company or an Affiliate) by the Company or an Affiliate, then the Restricted Shares will vest in the numbers and on the dates specified in the Vesting Schedule at the beginning of this Agreement.

(b)    If the Employee's employment by the Company or an Affiliate terminates because of the Employee's death (or if the Employee dies within 90 days after termination of employment for any reason other than for Cause (as defined below)), then the unvested Restricted Shares will immediately vest in full.

(c)    If the Employee's employment with the Company or an Affiliate terminates for any reason, other than for Cause (as defined below) or because of the Employee's

---

*    Unless the context indicates otherwise, terms that are not defined in this Agreement shall have the meaning set forth in the Plan.

AM2003RSW

death, then the Restricted Shares shall continue to vest in accordance with the Vesting Schedule set forth above; provided, however, that any remaining Restricted Shares which do not become vested will immediately be forfeited in accordance with Section 4 of this Agreement if the Employee does any of the following after such termination:

(i)    uses, discloses or misappropriates any Company-Related Information (as defined below) unless the Company or an Affiliate consents otherwise in writing. "Company-Related Information" means any confidential or secret knowledge or information of the Company or an Affiliate that the Employee has acquired or become acquainted with during the Employee's employment with the Company or an Affiliate, including, without limitation, any confidential customer list, confidential business information, confidential materials relating to the practices or procedures of the Company or an Affiliate, or any other proprietary information of the Company or an Affiliate; provided, however that Company-Related Information shall not include any knowledge or information that is now published or which subsequently becomes generally publicly known in the form in which it was obtained from the Company or an Affiliate, other than as a direct or indirect result of the Employee's disclosure in contradiction of this Section 2(c);

(ii)    without the prior written consent of the Company or an Affiliate, directly or indirectly, owns, manages, operates, controls or participates in the ownership, management, operation or control of, or becomes connected as an officer, employee, partner, director, consultant, independent contractor or otherwise with, or has any financial interest or other pecuniary interest in, any Competing Business (as defined below). A "Competing Business" means any corporation, partnership, limited liability company or other business association, organization or entity or person of any kind whatsoever that (i) competes or plans to compete with the Company or any Affiliate in any line of business or (ii) otherwise offers any type of securities, investment or other financial products or services as a principal part of its business, regardless of whether such products or services are currently offered, or proposed to be offered, by the Company or any Affiliate. Notwithstanding the foregoing, ownership, for passive personal investment purposes only, of less than 5% of the voting stock of any publicly held corporation shall not by itself result in forfeiture of the Restricted Shares;

(iii)    without the prior written consent of the Company or an Affiliate, accepts a position as an officer, employee, partner, consultant or independent contractor with any corporation, partnership, limited liability company or other business association, organization or entity or person of any kind whatsoever (regardless of whether such position is with a Competing Business) if such position involves duties, responsibilities or expertise similar to that of the Employee's position of employment with the Company or an Affiliate at the time of the Employee's termination of such employment;

(iv)    directly or indirectly, on behalf of the Employee or any other person (including a Competing Business), solicits for employment in a Competing

3

AM2003RSW

Business any person who was employed by the Company or an Affiliate within three years prior to the date of the Employee's termination of employment; or

(v)     directly or indirectly, on behalf of the Employee or any other person (including a Competing Business), solicits any customers, clients or accounts of the Company or any Affiliate or otherwise seeks to divert such customers, clients or accounts away from the Company or any Affiliate.

(d)     Notwithstanding any other provisions of this Agreement to the contrary, the Committee may in its sole discretion, declare at any time that the Restricted Shares, or any portion thereof, shall vest immediately.

3.     Lapse of Restrictions.  Upon the vesting of any Restricted Shares, such vested Restricted Shares will no longer be subject to forfeiture as provided in Section 4 of this Agreement.

4.     Forfeiture.  If (i) the Employee attempts to pledge, encumber, assign, transfer or otherwise dispose of any of the Restricted Shares (except as permitted by Section 1(b) of this Agreement) or the Restricted Shares become subject to attachment or any similar involuntary process in violation of this Agreement, or (ii) the Employee's employment with the Company or an Affiliate (A) is terminated for Cause or (B) terminates under the circumstances covered by Section 2(c) of this Agreement and the Employee subsequently violates any of the restrictions contained in such Section, then any Restricted Shares that have not previously vested shall be forfeited by the Employee to the Company, the Employee shall thereafter have no right, title or interest whatever in such Restricted Shares, and, if the Company does not have custody of any and all certificates representing Restricted Shares so forfeited, the Employee shall immediately return to the Company any and all certificates representing Restricted Shares so forfeited. Additionally, the Employee will deliver to the Company a stock power duly executed in blank relating to any and all certificates representing Restricted Shares forfeited to the Company in accordance with the previous sentence or, if such stock power has previously been tendered to the Company, the Company will be authorized to deem such previously tendered stock power delivered, and the Company will be authorized to cancel any and all certificates representing Restricted Shares so forfeited and to cause a book entry to be made in the records of the Company's transfer agent in the name of the Employee (or a new stock certificate to be issued, if requested by the Employee) evidencing any Shares that vested prior to forfeiture. If the Restricted Shares are evidenced by a book entry made in the records of the Company's transfer agent, then the Company will be authorized to cause such book entry to be adjusted to reflect the number of Restricted Shares so forfeited. "Cause" means (i) the Employee's continued failure to substantially perform his or her duties with the Company or an Affiliate after demand for substantial performance is delivered to the Employee, (ii) the Employee's conviction of a crime (including misdemeanors) that, in the Company's determination, impairs the Employee's ability to perform his or her duties with the Company or an Affiliate, (iii) the Employee's violation of any policy of the Company or an Affiliate that the Company deems material, (iv) the Employee's violation of any securities law, rule or regulation that the Company deems material, (v) the Employee's engagement in conduct that, in the Company's determination, exposes the Company

4

or an Affiliate to civil or regulatory liability or injury to their reputations, (vi) the Employee's engagement in conduct that would subject the Employee to statutory disqualification pursuant to Section 15(b) of the Exchange Act and the regulations promulgated thereunder, or (vii) the Employee's gross or willful misconduct, as determined by the Company.

     5.    <u>Stockholder Rights</u>.  As of the date of issuance specified at the beginning of this Agreement, the Employee shall have all of the rights of a stockholder of the Company with respect to the Restricted Shares, except as otherwise specifically provided in this Agreement.

     6.    <u>Tax Withholding</u>.  The parties hereto recognize that the Company or an Affiliate may be obligated to withhold federal and state taxes or other taxes upon the vesting of the Restricted Shares, or, in the event that the Employee elects under Code Section 83(b) to report the receipt of the Restricted Shares as income in the year of receipt, upon the Employee's receipt of the Restricted Shares.  The Employee agrees that, at such time, if the Company or an Affiliate is required to withhold such taxes, the Employee will promptly pay, in cash upon demand (or in any other manner permitted by the Committee in accordance with the terms of the Plan), to the Company or an Affiliate such amounts as shall be necessary to satisfy such obligation.  The Employee further acknowledges that the Company has directed the Employee to seek independent advice regarding the applicable provisions of the Code, the income tax laws of any municipality, state or foreign country in which the Employee may reside, and the tax consequences of the Employee's death.

     7.    <u>Restrictive Legends and Stop-Transfer Orders</u>.

     (a)    <u>Legends</u>.  The book entry or certificate representing the Restricted Shares shall contain a notation or bear the following legend (as well as any notations or legends required by applicable state and federal corporate and securities laws) noting the existence of the restrictions and the Company's rights to reacquire the Restricted Shares set forth in this Agreement:

> "THE SHARES REPRESENTED BY THIS [BOOK ENTRY] [CERTIFICATE] MAY BE TRANSFERRED ONLY IN ACCORDANCE WITH THE TERMS OF A RESTRICTED STOCK AGREEMENT BETWEEN THE COMPANY AND THE STOCKHOLDER, A COPY OF WHICH IS ON FILE WITH THE SECRETARY OF THE COMPANY."

     (b)    <u>Stop-Transfer Notices</u>.  The Employee agrees that, in order to ensure compliance with the restrictions referred to herein, the Company may issue appropriate "stop transfer" instructions to its transfer agent, if any, and that, if the Company transfers its own securities, it may make appropriate notations to the same effect in its own records.

     (c)    <u>Refusal to Transfer</u>.  The Company shall not be required (i) to transfer on its books any Restricted Shares that have been sold or otherwise transferred in violation of any of the provisions of this Agreement or (ii) to treat as owner of the Restricted Shares or to

AM2003RSW

accord the right to vote or pay dividends to any purchaser or other transferee to whom the Restricted Shares shall have been so transferred.

      8.    _Interpretation of This Agreement_. All decisions and interpretations made by the Committee with regard to any question arising hereunder or under the Plan shall be binding and conclusive upon the Company and the Employee. If there is any inconsistency between the provisions of this Agreement and the Plan, the provisions of the Plan shall govern.

      9.    _Not Part of Employment Contract; Discontinuance of Employment_. The Employee acknowledges that this Agreement awards restricted stock to the Employee, but does not impose any obligation on the Company to make any future grants or issue any future Awards to the Employee or otherwise continue the participation of the Employee under the Plan. This Agreement shall not give the Employee a right to continued employment with the Company or any Affiliate, and the Company or Affiliate employing the Employee may terminate his or her employment and otherwise deal with the Employee without regard to the effect it may have upon him or her under this Agreement.

      10.    _Binding Effect_. This Agreement shall be binding in all respects on the heirs, representatives, successors and assigns of the Employee.

      11.    _Choice of Law_. This Agreement is entered into under the laws of the State of Delaware and shall be construed and interpreted thereunder (without regard to its conflict-of-law principles).

      12.    _Entire Agreement_. This Agreement and the Plan set forth the entire agreement and understanding of the parties hereto with respect to the issuance and sale of the Restricted Shares and the administration of the Plan and supersede all prior agreements, arrangements, plans, and understandings relating to the issuance and sale of the Restricted Shares and the administration of the Plan.

      13.    _Amendment and Waiver_. Except as provided in the Plan, this Agreement may be amended, waived, modified, or canceled only by a written instrument executed by the parties or, in the case of a waiver, by the party waiving compliance.

      14.    _Acknowledgment of Receipt of Copy_. By execution hereof, the Employee acknowledges having received a copy of the prospectus related to the Plan and instructions on how to access a copy of the Plan.

6

AM2003RSW

2.  If I have used any of the following terms on this form and I have not otherwise specifically defined that term, the term shall have the following meaning: "issue" means all persons who are lineal descendants of the person whose issue are referred to, including legally adopted descendants and their descendants but not including illegitimate descendants and their descendants; "child" means an issue of the first generation; "per stirpes" means in equal shares among living children of the person whose issue are referred to and the issue (taken collectively) of each deceased child of such person, with such issue taking by right of representation of such deceased child; and "survive" means living after my death; provided, however, that if there is not sufficient evidence that a Beneficiary was living after my death, it shall be deemed that the Beneficiary was not living after my death. Unless I have otherwise specified in this designation, if a Beneficiary survives me but dies before receipt of all payments due him or her under the Plan, such remaining payments shall be payable to his or her estate and not to any other Beneficiary.

3.  If I designate as a Beneficiary the person who is my spouse on the date of this designation either by name or by relationship, or both, the dissolution, annulment or other legal termination of my marriage to such person shall revoke such designation, and this form shall be interpreted as if such person did not survive me. If I designate any other Beneficiary both by name and by relationship to me, the description of the relationship is for identification purposes only and the designation of the Beneficiary by name will be given effect without regard to whether the relationship exists now or at my death. Any designation of a Beneficiary only by statement of relationship to me shall be effective only to designate the person or persons having such relationship to me at my death.

4.  Any previous Beneficiary designation made by me is hereby revoked. I reserve the power to change this designation at any time by a form similar to this both signed by me and received by you prior to my death.

5.  This Beneficiary designation shall be effective only if it is both signed by me and received by you prior to my death.

_____    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    03/08/06
Participant's Signature          Social Security Number    Date

2861 Clay St. San Francisco, CA 94115
Street            City        State        Zip

Married (Check one)    ☐ Yes ☐ No

IN WITNESS WHEREOF, the Employee and the Company have executed this
Agreement as of the date of issuance specified at the beginning of this Agreement.

EMPLOYEE

Charles J Moran

PIPER JAFFRAY COMPANIES

By    Andrew S. Duff
Its   Chairman and CEO

| Issuance Date | No. of Shares Covered | Vesting Date |
|---------------|----------------------|--------------|
| 02/21/06 | | 02/21/09 |

AM2003RSW

Exhibit B

PIPER JAFFRAY COMPANIES
AMENDED AND RESTATED
2003 ANNUAL AND LONG-TERM INCENTIVE PLAN

## RESTRICTED STOCK AGREEMENT

| | | |
|---|---|---|
| Name of Employee:   Charles J Moran | | |
| No. of Shares Covered:      2,913 | Date of Issuance: | February 15, 2007 |

Vesting Schedule pursuant to Section 2:

| Vesting Date(s)<br>February 15, 2010 | No. of Shares Which<br>Become Vested as of Such Date |
|---|---|
| | REDACTED |

This is a Restricted Stock Agreement ("Agreement") between Piper Jaffray Companies, a Delaware corporation (the "Company"), and the above-named employee of the Company (the "Employee").

Recitals

WHEREAS, the Company maintains the Piper Jaffray Companies Amended and Restated 2003 Annual and Long-Term Incentive Plan, as amended from time to time (the "Plan");

WHEREAS, the Board of Directors of the Company has appointed the Compensation Committee (the "Committee") with the authority to determine the awards to be granted under the Plan; and

WHEREAS, the Committee or its delegee has determined that the Employee is eligible to receive an award under the Plan in the form of restricted stock and has set the terms thereof;

NOW, THEREFORE, the Company hereby grants this award to the Employee under the terms set by the Committee as follows.

EXHIBIT _B_

<u>Terms and Conditions</u>

1.     <u>Grant of Restricted Stock.</u>

        (a)      Subject to the terms and conditions of this Agreement, the Company has granted to the Employee the number of Shares specified at the beginning of this Agreement. These Shares are subject to the restrictions provided for in this Agreement and are referred to collectively as the "Restricted Shares" and each as a "Restricted Share."

        (b)      The Restricted Shares will be evidenced by a book entry made in the records of the Company's transfer agent in the name of the Employee (unless the Employee requests a certificate evidencing the Restricted Shares). All restrictions provided for in this Agreement will apply to each Restricted Share and to any other securities distributed with respect to that Restricted Share. Unless otherwise permitted by the Committee in accordance with the terms of the Plan, the Restricted Shares may not (until such Restricted Shares have vested in the Employee in accordance with all terms and conditions of this Agreement) be assigned or transferred other than by will or the laws of descent and distribution and shall not be subject to pledge, hypothecation, execution, attachment or similar process. Each Restricted Share will remain restricted and subject to forfeiture to the Company unless and until that Restricted Share has vested in the Employee in accordance with all of the terms and conditions of this Agreement. Each book entry (or stock certificate if requested by the Employee) evidencing any Restricted Share may contain such notations or legends and stock transfer instructions or limitations as may be determined or authorized by the Company in its sole discretion. If a certificate evidencing any Restricted Share is requested by the Employee, the Company may, in its sole discretion, retain custody of any such certificate throughout the period during which any restrictions are in effect and require, as a condition to issuing any such certificate, that the Employee tender to the Company a stock power duly executed in blank relating to such custody.

2.     <u>Vesting.</u>

        (a)      If the Employee remains continuously employed (including during the continuance of any leave of absence as approved by the Company or an Affiliate) by the Company or an Affiliate, then the Restricted Shares will vest in the numbers and on the dates specified in the Vesting Schedule at the beginning of this Agreement.

        (b)      If the Employee's employment by the Company or an Affiliate terminates because of the Employee's death or long-term disability (as defined in the Company's long-term disability plan, a "Disability"), then the unvested Restricted Shares will immediately vest in full.

        (c)      If the Employee's employment by the Company or an Affiliate terminates as a result of a Severance Event (as defined in the Company's Severance Plan and as determined in the

_____

        Unless the context indicates otherwise, terms that are not defined in this Agreement shall have the meaning set forth in the Plan.

2

AM2003RS07grant

sole discretion of the Company), then the unvested Restricted Shares will, as determined by the Committee and set forth in writing in a severance agreement, continue to vest in the numbers and on the dates specified in the Vesting Schedule at the beginning of this Agreement, so long as the Employee complies with the terms and conditions of the Severance Plan and the applicable severance agreement, including execution of a general release of all claims against the Company and any designated Affiliates and their respective agents, on a form provided by the Company for this purpose and within the timeframe designated by the Company, that becomes effective and enforceable.

(d)    If the Employee's employment with the Company or an Affiliate terminates for any reason other than for Cause (as defined below) or due to the Employee's death, Disability or as a result of a Severance Event (as set forth in paragraphs 2(b)-(c), above), then the Restricted Shares shall cease vesting and be forfeited in accordance with Section 4 of this Agreement, unless, at or around the time of such termination, the Employee voluntarily elects to sign a Post-Termination Agreement with the Company, and thereafter complies with the Employee's obligations under such agreement including the obligation to refrain from engaging in any Post-Termination Restricted Activities. "Post-Termination Restricted Activities" include each of the following:

(i)    at any time during the period set forth in the Post-Termination Agreement, the Employee uses, discloses or misappropriates any Company-Related Information (as defined below) unless the Company or an Affiliate consents otherwise in writing. "Company-Related Information" means any confidential or secret knowledge or information of the Company or an Affiliate that the Employee has acquired or become acquainted with during the Employee's employment with the Company or an Affiliate, including, without limitation, any confidential customer list, confidential business information, confidential materials relating to the practices or procedures of the Company or an Affiliate, or any other proprietary information of the Company or an Affiliate; provided, however that Company-Related Information shall not include any knowledge or information that is now published or which subsequently becomes generally publicly known in the form in which it was obtained from the Company or an Affiliate, other than as a direct or indirect result of the Employee's disclosure in contradiction of this Section 2(d);

(ii)    any time during the period set forth in the Post-Termination Agreement, the Employee directly or indirectly, on behalf of the Employee or any other person (including but not limited to a Talent Competitor (as defined below)), solicits for employment any person employed by the Company or an Affiliate who was employed by the Company or an Affiliate and with whom Employee interacted at any time within three (3) years prior to the date of the Employee's termination of employment;

(iii)any time during the period set forth in the Post-Termination Agreement, the Employee directly or indirectly, on behalf of any Talent Competitor, solicits any customer, client or account of the Company or any Affiliate, that was a customer, client or account of the Company or any Affiliate and with whom the Employee interacted at any time within three (3) years prior to the date of the Employee's termination of employment, or

AM2003RS07grant

the Employee otherwise seeks to divert any such customer, client or account away from the Company or any Affiliate; or

(iv)     any time during the period set forth in the Post-Termination Agreement, without the prior written consent of the Company or an Affiliate, the Employee directly or indirectly owns, manages, operates, controls or participates in the ownership, management, operation or control of a Talent Competitor; or becomes connected as an officer, employee, partner, director, consultant, independent contractor or otherwise with a Talent Competitor; or has or acquires any financial or other pecuniary interest in any Talent Competitor. A "Talent Competitor" means any corporation, partnership, limited liability company or other business association, organization or entity or person of any kind whatsoever that engages in the investment banking, securities brokerage or investment management business, including, but not limited to, investment banks, sell-side broker dealers, mergers and acquisitions or strategic advisory firms, merchant banks, hedge funds, private equity firms, venture capital firms, asset managers and investment advisory firms. Notwithstanding the foregoing, however, ownership by the Employee, for passive personal investment purposes only, of less than 5% of the voting stock of a Talent Competitor that is any publicly held corporation shall not by itself constitute engaging in a Post-Termination Restricted Activity.

If and so long as the conditions of Paragraph 2(d) are satisfied, the Restricted Shares shall not cease to vest and be forfeited in accordance with Section 4 of this Agreement but, as set forth in the Post-Termination Agreement, shall vest in full or will continue to vest in the numbers and on the dates specified in the Vesting Schedule at the beginning of this Agreement.

(e)     Notwithstanding any other provisions of this Agreement to the contrary, the Committee may in its sole discretion, declare at any time that the Restricted Shares, or any portion thereof, shall vest immediately or, to the extent they otherwise would be forfeited pursuant to the terms of this Agreement, shall vest in the numbers and on the dates specified in the Vesting Schedule at the beginning of this Agreement, or in such other numbers and on such other dates as are determined by the Committee to be in the interests of the Company as determined by the Committee in its sole discretion.

3.     Lapse of Restrictions.  Upon the vesting of any Restricted Shares, such vested Restricted Shares will no longer be subject to forfeiture as provided in Section 4 of this Agreement.

4.     Forfeiture.  If (i) the Employee attempts to pledge, encumber, assign, transfer or otherwise dispose of any of the Restricted Shares (except as permitted by Section 1(b) of this Agreement) or the Restricted Shares become subject to attachment or any similar involuntary process in violation of this Agreement, or (ii) the Employee's employment with the Company or an Affiliate (A) is terminated for Cause or (B) terminates under the circumstances covered by Section 2(c) or Section 2(d) of this Agreement and either (1) the conditions or restrictions of such Section, as applicable, are not satisfied or (2) the conditions or restrictions of such Section, as applicable, are satisfied but the Employee subsequently violates any of them, then any Restricted Shares that have not previously vested shall be forfeited by the Employee to the Company, the Employee shall

thereafter have no right, title or interest whatever in such Restricted Shares, and, if the Company does not have custody of any and all certificates representing Restricted Shares so forfeited, the Employee shall immediately return to the Company any and all certificates representing Restricted Shares so forfeited. Additionally, the Employee will deliver to the Company a stock power duly executed in blank relating to any and all certificates representing Restricted Shares forfeited to the Company in accordance with the previous sentence or, if such stock power has previously been tendered to the Company, the Company will be authorized to deem such previously tendered stock power delivered, and the Company will be authorized to cancel any and all certificates representing Restricted Shares so forfeited and to cause a book entry to be made in the records of the Company's transfer agent in the name of the Employee (or a new stock certificate to be issued, if requested by the Employee) evidencing any Shares that vested prior to forfeiture. If the Restricted Shares are evidenced by a book entry made in the records of the Company's transfer agent, then the Company will be authorized to cause such book entry to be adjusted to reflect the number of Restricted Shares so forfeited. "Cause" means (i) the Employee's continued failure to substantially perform his or her duties with the Company or an Affiliate after written demand for substantial performance is delivered to the Employee, (ii) the Employee's conviction of a crime (including misdemeanors) that, in the Company's determination, impairs the Employee's ability to perform his or her duties with the Company or an Affiliate, (iii) the Employee's violation of any policy of the Company or an Affiliate that the Company deems material, (iv) the Employee's violation of any securities law, rule or regulation that the Company deems material, (v) the Employee's engagement in conduct that, in the Company's determination, exposes the Company or an Affiliate to civil or regulatory liability or injury to their reputations, (vi) the Employee's engagement in conduct that would subject the Employee to statutory disqualification pursuant to Section 15(b) of the Exchange Act and the regulations promulgated thereunder, or (vii) the Employee's gross or willful misconduct, as determined by the Company.

5.     **Stockholder Rights.**  As of the date of issuance specified at the beginning of this Agreement, the Employee shall have all of the rights of a stockholder of the Company with respect to the Restricted Shares, except as otherwise specifically provided in this Agreement.

6.     **Tax Withholding.**  The parties hereto recognize that the Company or an Affiliate may be obligated to withhold federal and state taxes or other taxes upon the vesting of the Restricted Shares, or, in the event that the Employee elects under Code Section 83(b) to report the receipt of the Restricted Shares as income in the year of receipt, upon the Employee's receipt of the Restricted Shares. The Employee agrees that, at such time, if the Company or an Affiliate is required to withhold such taxes, the Employee will promptly pay, in cash upon demand (or in any other manner permitted by the Committee in accordance with the terms of the Plan), to the Company or an Affiliate such amounts as shall be necessary to satisfy such obligation. The Employee further acknowledges that the Company has directed the Employee to seek independent advice regarding the applicable provisions of the Code, the income tax laws of any municipality, state or foreign country in which the Employee may reside, and the tax consequences of the Employee's death.

AM2003RS07grant

7.    Restrictive Legends and Stop-Transfer Orders.

(a)    Legends.  The book entry or certificate representing the Restricted Shares shall contain a notation or bear the following legend (as well as any notations or legends required by applicable state and federal corporate and securities laws) noting the existence of the restrictions and the Company's rights to reacquire the Restricted Shares set forth in this Agreement:

> "THE SHARES REPRESENTED BY THIS [BOOK ENTRY] [CERTIFICATE] MAY BE TRANSFERRED ONLY IN ACCORDANCE WITH THE TERMS OF A RESTRICTED STOCK AGREEMENT BETWEEN THE COMPANY AND THE STOCKHOLDER, A COPY OF WHICH IS ON FILE WITH THE SECRETARY OF THE COMPANY."

(b)    Stop-Transfer Notices.  The Employee agrees that, in order to ensure compliance with the restrictions referred to herein, the Company may issue appropriate "stop transfer" instructions to its transfer agent, if any, and that, if the Company transfers its own securities, it may make appropriate notations to the same effect in its own records.

(c)    Refusal to Transfer.  The Company shall not be required (i) to transfer on its books any Restricted Shares that have been sold or otherwise transferred in violation of any of the provisions of this Agreement or (ii) to treat as owner of the Restricted Shares or to accord the right to vote or pay dividends to any purchaser or other transferee to whom the Restricted Shares shall have been so transferred.

8.    Interpretation of This Agreement.  All decisions and interpretations made by the Committee with regard to any question arising hereunder or under the Plan shall be binding and conclusive upon the Company and the Employee.  If there is any inconsistency between the provisions of this Agreement and the Plan, the provisions of the Plan shall govern.

9.    Not Part of Employment Contract; Discontinuance of Employment.  The Employee acknowledges that this Agreement awards restricted stock to the Employee, but does not impose any obligation on the Company to make any future grants or issue any future Awards to the Employee or otherwise continue the participation of the Employee under the Plan.  This Agreement shall not give the Employee a right to continued employment with the Company or any Affiliate, and the Company or Affiliate employing the Employee may terminate his or her employment and otherwise deal with the Employee without regard to the effect it may have upon him or her under this Agreement.

10.    Binding Effect.  This Agreement shall be binding in all respects on the heirs, representatives, successors and assigns of the Employee.

11.    Choice of Law.  This Agreement is entered into under the laws of the State of Delaware and shall be construed and interpreted thereunder (without regard to its conflict-of-law principles).

AM2003RS07grant

11.    <u>Choice of Law</u>.  This Agreement is entered into under the laws of the State of Delaware and shall be construed and interpreted thereunder (without regard to its conflict-of-law principles).

12.    <u>Entire Agreement</u>.  This Agreement and the Plan set forth the entire agreement and understanding of the parties hereto with respect to the issuance and sale of the Restricted Shares and the administration of the Plan and supersede all prior agreements, arrangements, plans, and understandings relating to the issuance and sale of the Restricted Shares and the administration of the Plan.

13.    <u>Amendment and Waiver</u>.  Except as provided in the Plan, this Agreement may be amended, waived, modified, or canceled only by a written instrument executed by the parties or, in the case of a waiver, by the party waiving compliance.

14.    <u>Acknowledgment of Receipt of Copy</u>.  By execution hereof, the Employee acknowledges having received a copy of the prospectus related to the Plan and instructions on how to access a copy of the Plan.

IN WITNESS WHEREOF, the Employee and the Company have executed this Agreement as of the date of issuance specified at the beginning of this Agreement.

EMPLOYEE

_____
Charles J Moran

PIPER JAFFRAY COMPANIES

By      Andrew S. Duff
Its     Chairman and CEO

| Issuance Date | No. of Shares Covered | Vesting Date |
|---|---|---|
| February 15, 2007 | | February 15, 2010 |

7

AM2003RS07grant

Exhibit C

PIPER JAFFRAY COMPANIES
AMENDED AND RESTATED
2003 ANNUAL AND LONG-TERM INCENTIVE PLAN

RESTRICTED STOCK AGREEMENT

| Name of Employee:   Charles J. Moran | |
|---|---|
| No. of Shares Covered: 6,362 | Date of Issuance:   May 15, 2008 |

| Vesting Schedule pursuant to Section 2: | |
|---|---|
| **Vesting Date(s)**<br>May 15, 2011 | No. of Shares Which<br>Become Vested as of Such Date<br><br>[ ] |

This is a Restricted Stock Agreement ("Agreement") between Piper Jaffray Companies, a Delaware corporation (the "Company"), and the above-named employee of the Company (the "Employee").

Recitals

WHEREAS, the Company maintains the Piper Jaffray Companies Amended and Restated 2003 Annual and Long-Term Incentive Plan, as amended from time to time (the "Plan");

WHEREAS, the Board of Directors of the Company has appointed the Compensation Committee (the "Committee") with the authority to determine the awards to be granted under the Plan; and

WHEREAS, the Committee or its delegee has determined that the Employee is eligible to receive an award under the Plan in the form of restricted stock and has set the terms thereof;

NOW, THEREFORE, the Company hereby grants this award to the Employee under the terms set by the Committee as follows.

EXHIBIT   C

## Terms and Conditions*

1.   **Grant of Restricted Stock.**

(a)     Subject to the terms and conditions of this Agreement, the Company has granted to the Employee the number of Shares specified at the beginning of this Agreement. These Shares are subject to the restrictions provided for in this Agreement and are referred to collectively as the "Restricted Shares" and each as a "Restricted Share."

(b)     The Restricted Shares will be evidenced by a book entry made in the records of the Company's transfer agent in the name of the Employee (unless the Employee requests a certificate evidencing the Restricted Shares). All restrictions provided for in this Agreement will apply to each Restricted Share and to any other securities distributed with respect to that Restricted Share. Unless otherwise permitted by the Committee in accordance with the terms of the Plan, the Restricted Shares may not (until such Restricted Shares have vested in the Employee in accordance with all terms and conditions of this Agreement) be assigned or transferred other than by will or the laws of descent and distribution and shall not be subject to pledge, hypothecation, execution, attachment or similar process. Each Restricted Share will remain restricted and subject to forfeiture to the Company unless and until that Restricted Share has vested in the Employee in accordance with all of the terms and conditions of this Agreement. Each book entry (or stock certificate if requested by the Employee) evidencing any Restricted Share may contain such notations or legends and stock transfer instructions or limitations as may be determined or authorized by the Company in its sole discretion. If a certificate evidencing any Restricted Share is requested by the Employee, the Company may, in its sole discretion, retain custody of any such certificate throughout the period during which any restrictions are in effect and require, as a condition to issuing any such certificate, that the Employee tender to the Company a stock power duly executed in blank relating to such custody.

2.   **Vesting.**

(a)     If the Employee remains continuously employed (including during the continuance of any leave of absence as approved by the Company or an Affiliate) by the Company or an Affiliate, then the Restricted Shares will vest in the numbers and on the dates specified in the Vesting Schedule at the beginning of this Agreement.

(b)     If the Employee's employment by the Company or an Affiliate terminates because of the Employee's death or long-term disability (as defined in the Company's long-term disability plan, a "Disability"), then the unvested Restricted Shares will immediately vest in full.

(c)     If the Employee's employment by the Company or an Affiliate terminates as a result of a Severance Event (as defined in the Company's Severance Plan and as determined in the

---

*   Unless the context indicates otherwise, terms that are not defined in this Agreement shall have the meaning set forth in the Plan.

AM2003RS08grant

sole discretion of the Company), then the unvested Restricted Shares will, as determined by the Committee and set forth in writing in a severance agreement, continue to vest in the numbers and on the dates specified in the Vesting Schedule at the beginning of this Agreement, so long as the Employee complies with the terms and conditions of the Severance Plan and the applicable severance agreement, including execution of a general release of all claims against the Company and any designated Affiliates and their respective agents, on a form provided by the Company for this purpose and within the timeframe designated by the Company, that becomes effective and enforceable.

(d) If the Employee's employment with the Company or an Affiliate terminates for any reason other than for Cause (as defined below) or due to the Employee's death, Disability or as a result of a Severance Event (as set forth in paragraphs 2(b)-(c), above), then the Restricted Shares shall cease vesting and be forfeited in accordance with Section 4 of this Agreement, unless, at or around the time of such termination, the Employee voluntarily elects to sign a Post-Termination Agreement with the Company, and thereafter complies with the Employee's obligations under such agreement including the obligation to refrain from engaging in any Post-Termination Restricted Activities. "Post-Termination Restricted Activities" include each of the following:

(i) at any time during the period set forth in the Post-Termination Agreement, the Employee uses, discloses or misappropriates any Company-Related Information (as defined below) unless the Company or an Affiliate consents otherwise in writing. "Company-Related Information" means any confidential or secret knowledge or information of the Company or an Affiliate that the Employee has acquired or become acquainted with during the Employee's employment with the Company or an Affiliate, including, without limitation, any confidential customer list, confidential business information, confidential materials relating to the practices or procedures of the Company or an Affiliate, or any other proprietary information of the Company or an Affiliate; provided, however that Company-Related Information shall not include any knowledge or information that is now published or which subsequently becomes generally publicly known in the form in which it was obtained from the Company or an Affiliate, other than as a direct or indirect result of the Employee's disclosure in contradiction of this Section 2(d);

(ii) any time during the period set forth in the Post-Termination Agreement, the Employee directly or indirectly, on behalf of the Employee or any other person (including but not limited to a Talent Competitor (as defined below)), solicits for employment any person employed by the Company or an Affiliate who was employed by the Company or an Affiliate and with whom Employee interacted at any time within three (3) years prior to the date of the Employee's termination of employment;

(iii) any time during the period set forth in the Post-Termination Agreement, the Employee directly or indirectly, on behalf of any Talent Competitor, solicits any customer, client or account of the Company or any Affiliate, that was a customer, client or account of the Company or any Affiliate and with whom the Employee interacted at

3                                                          AM2003RS08grant

any time within three (3) years prior to the date of the Employee's termination of employment, or the Employee otherwise seeks to divert any such customer, client or account away from the Company or any Affiliate; or

(iv) any time during the period set forth in the Post-Termination Agreement, without the prior written consent of the Company or an Affiliate, the Employee directly or indirectly owns, manages, operates, controls or participates in the ownership, management, operation or control of a Talent Competitor; or becomes connected as an officer, employee, partner, director, consultant, independent contractor or otherwise with a Talent Competitor; or has or acquires any financial or other pecuniary interest in any Talent Competitor. A "Talent Competitor" means any corporation, partnership, limited liability company or other business association, organization or entity or person of any kind whatsoever that engages in the investment banking, securities brokerage or investment management business, including, but not limited to, investment banks, sell-side broker dealers, mergers and acquisitions or strategic advisory firms, merchant banks, hedge funds, private equity firms, venture capital firms, asset managers and investment advisory firms. Notwithstanding the foregoing, however, ownership by the Employee, for passive personal investment purposes only, of less than 5% of the voting stock of a Talent Competitor that is any publicly held corporation shall not by itself constitute engaging in a Post-Termination Restricted Activity.

If and so long as the conditions of Paragraph 2(d) are satisfied, the Restricted Shares shall not cease to vest and be forfeited in accordance with Section 4 of this Agreement but, as set forth in the Post-Termination Agreement, shall vest in full or will continue to vest in the numbers and on the dates specified in the Vesting Schedule at the beginning of this Agreement.

(e) Notwithstanding any other provisions of this Agreement to the contrary, the Committee may in its sole discretion, declare at any time that the Restricted Shares, or any portion thereof, shall vest immediately or, to the extent they otherwise would be forfeited pursuant to the terms of this Agreement, shall vest in the numbers and on the dates specified in the Vesting Schedule at the beginning of this Agreement, or in such other numbers and on such other dates as are determined by the Committee to be in the interests of the Company as determined by the Committee in its sole discretion.

3. Lapse of Restrictions. Upon the vesting of any Restricted Shares, such vested Restricted Shares will no longer be subject to forfeiture as provided in Section 4 of this Agreement.

4. Forfeiture. If (i) the Employee attempts to pledge, encumber, assign, transfer or otherwise dispose of any of the Restricted Shares (except as permitted by Section 1(b) of this Agreement) or the Restricted Shares become subject to attachment or any similar involuntary process in violation of this Agreement, or (ii) the Employee's employment with the Company or an Affiliate (A) is terminated for Cause or (B) terminates under the circumstances covered by Section 2(c) or Section 2(d) of this Agreement and either (1) the conditions or restrictions of such Section, as applicable, are not satisfied or (2) the conditions or restrictions of such Section, as applicable, are satisfied but the Employee subsequently violates any of them, then any Restricted

4

Shares that have not previously vested shall be forfeited by the Employee to the Company, the Employee shall thereafter have no right, title or interest whatever in such Restricted Shares, and, if the Company does not have custody of any and all certificates representing Restricted Shares so forfeited, the Employee shall immediately return to the Company any and all certificates representing Restricted Shares so forfeited. Additionally, the Employee will deliver to the Company a stock power duly executed in blank relating to any and all certificates representing Restricted Shares forfeited to the Company in accordance with the previous sentence or, if such stock power has previously been tendered to the Company, the Company will be authorized to deem such previously tendered stock power delivered, and the Company will be authorized to cancel any and all certificates representing Restricted Shares so forfeited and to cause a book entry to be made in the records of the Company's transfer agent in the name of the Employee (or a new stock certificate to be issued, if requested by the Employee) evidencing any Shares that vested prior to forfeiture. If the Restricted Shares are evidenced by a book entry made in the records of the Company's transfer agent, then the Company will be authorized to cause such book entry to be adjusted to reflect the number of Restricted Shares so forfeited. "Cause" means (i) the Employee's continued failure to substantially perform his or her duties with the Company or an Affiliate after written demand for substantial performance is delivered to the Employee, (ii) the Employee's conviction of a crime (including misdemeanors) that, in the Company's determination, impairs the Employee's ability to perform his or her duties with the Company or an Affiliate, (iii) the Employee's violation of any policy of the Company or an Affiliate that the Company deems material, (iv) the Employee's violation of any securities law, rule or regulation that the Company deems material, (v) the Employee's engagement in conduct that, in the Company's determination, exposes the Company or an Affiliate to civil or regulatory liability or injury to their reputations, (vi) the Employee's engagement in conduct that would subject the Employee to statutory disqualification pursuant to Section 15(b) of the Exchange Act and the regulations promulgated thereunder, or (vii) the Employee's gross or willful misconduct, as determined by the Company.

5.      Stockholder Rights.  As of the date of issuance specified at the beginning of this Agreement, the Employee shall have all of the rights of a stockholder of the Company with respect to the Restricted Shares, except as otherwise specifically provided in this Agreement.

6.      Tax Withholding.  The parties hereto recognize that the Company or an Affiliate may be obligated to withhold federal and state taxes or other taxes upon the vesting of the Restricted Shares, or, in the event that the Employee elects under Code Section 83(b) to report the receipt of the Restricted Shares as income in the year of receipt, upon the Employee's receipt of the Restricted Shares. The Employee agrees that, at such time, if the Company or an Affiliate is required to withhold such taxes, the Employee will promptly pay, in cash upon demand (or in any other manner permitted by the Committee in accordance with the terms of the Plan), to the Company or an Affiliate such amounts as shall be necessary to satisfy such obligation. The Employee further acknowledges that the Company has directed the Employee to seek independent advice regarding the applicable provisions of the Code, the income tax laws of any municipality, state or foreign country in which the Employee may reside, and the tax consequences of the Employee's death.

AM2003RS08grant

7.     Restrictive Legends and Stop-Transfer Orders.

(a)     Legends.  The book entry or certificate representing the Restricted Shares shall contain a notation or bear the following legend (as well as any notations or legends required by applicable state and federal corporate and securities laws) noting the existence of the restrictions and the Company's rights to reacquire the Restricted Shares set forth in this Agreement:

> "THE SHARES REPRESENTED BY THIS [BOOK ENTRY] [CERTIFICATE] MAY BE TRANSFERRED ONLY IN ACCORDANCE WITH THE TERMS OF A RESTRICTED STOCK AGREEMENT BETWEEN THE COMPANY AND THE STOCKHOLDER, A COPY OF WHICH IS ON FILE WITH THE SECRETARY OF THE COMPANY."

(b)     Stop-Transfer Notices.  The Employee agrees that, in order to ensure compliance with the restrictions referred to herein, the Company may issue appropriate "stop transfer" instructions to its transfer agent, if any, and that, if the Company transfers its own securities, it may make appropriate notations to the same effect in its own records.

(c)     Refusal to Transfer.  The Company shall not be required (i) to transfer on its books any Restricted Shares that have been sold or otherwise transferred in violation of any of the provisions of this Agreement or (ii) to treat as owner of the Restricted Shares or to accord the right to vote or pay dividends to any purchaser or other transferee to whom the Restricted Shares shall have been so transferred.

8.     Interpretation of This Agreement.  All decisions and interpretations made by the Committee with regard to any question arising hereunder or under the Plan shall be binding and conclusive upon the Company and the Employee.  If there is any inconsistency between the provisions of this Agreement and the Plan, the provisions of the Plan shall govern.

9.     Not Part of Employment Contract; Discontinuance of Employment.  The Employee acknowledges that this Agreement awards restricted stock to the Employee, but does not impose any obligation on the Company to make any future grants or issue any future Awards to the Employee or otherwise continue the participation of the Employee under the Plan.  This Agreement shall not give the Employee a right to continued employment with the Company or any Affiliate, and the Company or Affiliate employing the Employee may terminate his or her employment and otherwise deal with the Employee without regard to the effect it may have upon him or her under this Agreement.

10.     Binding Effect.  This Agreement shall be binding in all respects on the heirs, representatives, successors and assigns of the Employee.

AM2003RS08grant

11.     Choice of Law.  This Agreement is entered into under the laws of the State of Delaware and shall be construed and interpreted thereunder (without regard to its conflict-of-law principles).

12.     Entire Agreement.  This Agreement and the Plan set forth the entire agreement and understanding of the parties hereto with respect to the issuance and sale of the Restricted Shares and the administration of the Plan and supersede all prior agreements, arrangements, plans, and understandings relating to the issuance and sale of the Restricted Shares and the administration of the Plan.

13.     Amendment and Waiver.  Except as provided in the Plan, this Agreement may be amended, waived, modified, or canceled only by a written instrument executed by the parties or, in the case of a waiver, by the party waiving compliance.

14.     Acknowledgment of Receipt of Copy.  By execution hereof, the Employee acknowledges having received a copy of the prospectus related to the Plan and instructions on how to access a copy of the Plan.

      IN WITNESS WHEREOF, the Employee and the Company have executed this Agreement as of the date of issuance specified at the beginning of this Agreement.

EMPLOYEE

_____
Charles J. Moran

PIPER JAFFRAY COMPANIES

By      Andrew S. Duff
Its.    Chairman and CEO

| Issuance Date | No. of Shares Covered | Vesting Date |
|---|---|---|
| May 15, 2008 | | May 15, 2011 |

7

AM2003RS08grant

Exhibit 2

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|

TELEPHONE NO.:                               FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| **(Check one):**  ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)   ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                          Time:                     Dept.:              Div.:              Room:

Address of court *(if different from the address above):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint  ☐ cross-complaint  *(describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
    The party or parties request  ☐ a jury trial  ☐ a nonjury trial   *(if more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
    a.  ☐ The trial has been set for *(date):*
    b.  ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

    c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
    The party or parties estimate that the trial will take *(check one):*
    a.  ☐ days *(specify number):*
    b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
    The party or parties will be represented at trial  ☐ by the attorney or party listed in the caption  ☐ by the following:
    a.  Attorney:
    b.  Firm:
    c.  Address:
    d.  Telephone number:
    e.  Fax number:
    f.  E-mail address:
    g.  Party represented:
    ☐  Additional representation is described in Attachment 8.

9.  **Preference**
    ☐  This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
    a.  Counsel  ☐ has  ☐ has not   provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b.  ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
    c.  ☐ The case has gone to an ADR process *(indicate status):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.  The party or parties are willing to participate in (check all that apply):

(1) ☐ Mediation

(2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

(3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

(4) ☐ Binding judicial arbitration

(5) ☐ Binding private arbitration

(6) ☐ Neutral case evaluation

(7) ☐ Other (specify):

e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court (specify exemption):

## 11. Settlement conference

☐ The party or parties are willing to participate in an early settlement conference (specify when):

## 12. Insurance

a. ☐ Insurance carrier, if any, for party filing this statement (name):

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case (explain):

## 13. Jurisdiction

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy ☐ Other (specify):

Status:

## 14. Related cases, consolidation, and coordination

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 14a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by (name party):

## 15. Bifurcation

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action (specify moving party, type of motion, and reasons):

## 16. Other motions

☐ The party or parties expect to file the following motions before trial (specify moving party, type of motion, and issues):

CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Page 3 of 4

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**

Previous case management orders in this case are *(check one)*: ☐ none ☐ attached as Attachment 21.

**22. Total number of pages attached** *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached

**CASE MANAGEMENT STATEMENT**

Exhibit 3

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint.  (CRC 3.221(c))



**Superior Court of California
County of San Francisco**

# Introduction

Did you know that most civil lawsuits settle without a trial?

And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?

These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.

## Advantages of ADR

ADR can have a number of advantages over a lawsuit.

- *ADR can save time.* A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- *ADR can save money.* Court costs, attorneys fees, and expert fees can be saved.

- *ADR can be cooperative.* This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- *ADR can reduce stress.* There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- *ADR encourages participation.* The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- *ADR is flexible.* The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- *ADR can be more satisfying.* For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy.  Attorneys are encouraged to share this guide with clients.  By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1)   Judicial Arbitration
2)   Mediation
3)   The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony.  The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.  When the Court orders a case to arbitration it is called judicial arbitration.  The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration.  Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is _not_ binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

# MEDIATION

## Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case.  Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions.  Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

### Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes.  An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts.   Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties.  A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed.  If settlement is not reached through mediation, a case proceeds to trial as scheduled.

### Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation.  The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial.  Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110).  Both forms are attached to this packet.

### *Mediation Services of the Bar Association of San Francisco*

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at **www.sfbar.org/mediation** or you may call BASF at 415-982-1600.

### *Judicial Mediation*

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $800 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar.  The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute.  The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference.  A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case.  The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court.  Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If the Court assigns a matter to the ESP, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

*Cost*

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

* * * * * * * * * * * * * * * * * * * *

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA   94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE<br>DISPUTE RESOLUTION** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐   **Private Mediation**          ☐   **Mediation Services of BASF**   ☐   **Judicial Mediation**
☐   **Binding arbitration**                                                                        Judge _____
☐   **Non-binding judicial arbitration**                                                    Judge _____
☐   **BASF Early Settlement Program**
☐   **Other ADR process (describe)** _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

_____

| | | |
|---|---|---|
| _____<br>Name of Party Stipulating | _____<br>Name of Party or Attorney Executing Stipulation | _____<br>Signature of Party or Attorney |

☐   Plaintiff      ☐   Defendant   . ☐   Cross-defendant                        Dated: _____

| | | |
|---|---|---|
| _____<br>Name of Party Stipulating | _____<br>Name of Party or Attorney Executing Stipulation | _____<br>Signature of Party or Attorney |

☐   Plaintiff      ☐   Defendant      ☐   Cross-defendant                        Dated: _____

| | | |
|---|---|---|
| _____<br>Name of Party Stipulating | _____<br>Name of Party or Attorney Executing Stipulation | _____<br>Signature of Party or Attorney |

☐   Plaintiff      ☐   Defendant      ☐   Cross-defendant                        Dated: _____

☐   *Additional signature(s) attached*



# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

# Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy.  Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation.  Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended.  This program may also be utilized at anytime throughout the litigation process.  The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason
The Honorable James J. McBride

The Honorable Kevin M. McCarthy
The Honorable Marla J. Miller
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212.  A preference for a specific judge may be indicated but specific request are not guaranteed.  Please allow at least 30 days for scheduling.  The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited.  Submission of a stipulation to judicial mediation does not guarantee inclusion in the program.  You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA  94102
(415) 551-3876

04/08 (ja)



THE BAR ASSOCIATION OF SAN FRANCISCO

## PROCEDURES, FORMS, MEDIATOR BIOGRAPHIES AND PHOTOGRAPHS:

# www.sfbar.org/mediation

QUESTIONS?

adr@sfbar.org or 415-982-1600

EXPERIENCED MEDIATORS ARE
AVAILABLE IN THE FOLLOWING AREAS:

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Fee Disputes
Financial
Gay/Lesbian/Bisexual/Transgender Issues
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
Malpractice:
Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorists
Women's Issues
And more...

## Who Are the Mediators?

Experienced mediation professionals are available to assist in most areas of dispute, ranging from multi-party commercial matters to individuals in conflict. Each has been pre-approved pursuant to strict educational and experience requirements. In fact, our mediators average 15 years of mediation experience and 125 hours of formal mediation training.

## More Information

Our Web site - www.sfbar.org/mediation - provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law.

If you don't see the area you need in our 30+ panels, just contact us at adr@sfbar.org; it is very likely we can match your need with one of our panelists.



## How Much Does the Service Cost?

Mediators generously provide one hour of preparation and two hours of session time free of charge as a service to BASF and the community. To qualify for the pro bono hours, parties must file the consent to Mediate form with BASF. Hourly fees beyond those free hours vary depending on the mediator selected. BASF charges a minor administrative fee, which is for the costs of running the program.

## Who Can Use The Service?

The service can be utilized by anyone whether or not the dispute has been filed in a court. If a legal action is already underway, it can be used at any time during the litigation and is not limited to San Francisco litigants.

## What is BASF's Mediation Service?

Mediation is a voluntary, private dispute resolution process in which a trained mediator assists the parties in reaching an outcome that is mutually agreeable.

Mediation Services was established by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. This traditional mediation service is an approved alternative to court ordered Arbitration or Early Settlement.

## How Does it Work?

BASF's Mediation Services works quickly, matching a qualified mediator to a case within days. The assignment process is flexible; experienced BASF staff can suggest a mediator, or you can request three biographies to choose from, or request a particular mediator from our Web site.

WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600