1   NICHOLS KASTER & ANDERSON LLP
    Matthew C. Helland, CA State Bar No. 250451
2   Helland@nka.com
    One Embarcadero Center, Suite 720
3   San Francisco, CA  94111
    Telephone: (415) 277-7235
4   Facsimile: (415) 277-7238

5   NICHOLS KASTER & ANDERSON, PLLP
6   James H. Kaster, CA State Bar No. 248949
    kaster@nka.com
7   4600 IDS Center, 80 S. 8th Street
    Minneapolis, MN 55402
8   Telephone: (612) 256-3200
    Facsimile:  (612) 338-4878
9

10  Attorneys for Plaintiff

11              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
12

13  Charles Jason Moran,                    **CASE NO: 08-cv-3188**
14              Plaintiff,
15  v.                                      **PLAINTIFFS' NOTICE OF MOTION AND
                                            MOTION FOR PRELIMINARY
16  Piper Jaffray & Co.,                    INJUNCTION AND MEMORANDUM OF
    d/b/a Piper Jaffray,                    LAW AND POINTS OF AUTHORITIES**
17
                                            Date: August 22, 2008
18              Defendant.                  Time: 9:00 a.m.
                                            Place: Department 2, 17th Floor
19                                          Judge: Hon. Jeffrey S. White
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## <u>Table of Contents</u>

**NOTICE OF MOTION AND MOTION** ................................................................ 1

**I.    INTRODUCTION** .................................................................................. 1

**II.   STATEMENT OF ISSUES TO BE DECIDED** ................................... 2

**III.  FACTUAL BACKGROUND** ................................................................ 2

**IV.   ARGUMENT** ......................................................................................... 3

    a. Preliminary Injunction Standard ........................................................ 3

    b. There Is A High Likelihood That Plaintiff Will Succeed On The Merits ........................... 4

       i. California Law Will Apply To The Agreement. ........................... 4

          1. Delaware Law Is Contrary To Fundamental California State Policy. ...................... 5

          2. California Has A Greater Interest Than Delaware In This Case Because The Agreement Will Be Enforced In California And Plaintiff Lived And Worked In California. ........................................................... 6

       ii. The Forfeiture Provision Of The Non-Competes Is An Unlawful Restraint Of Trade Under Section 16600. ................................................... 7

       iii. The Client Non-Solicitation Agreements Are Unenforceable Because They Are Not Necessary To Protect Trade Secrets. .................................................. 9

    c. The Court Should Grant Plaintiff's Motion Because There Is The Possibility Of Irreparable Injury. ........................................................... 10

      1. Plaintiff Will Suffer A Greater Degree Of Harm Than Will Defendant If An Injunction Is Not Issued. ....................................................... 10

      2. The Harm To Plaintiff Will Be Irreparable ................................ 11

**V.    CONCLUSION** ..................................................................................... 12

1

<u>Table of Authorities</u>

2

**Cases**

3

<u>American Credit Indemnity Co. v. Sacks,</u>
213 Cal.App.3d 622 (1989)................................................................................................. 9, 10

4

5

<u>Application Group, Inc. v. Hunter Group, Inc.,</u>
61 Cal. App. 4th 881 (1998) .......................................................................................... 4, 5, 6, 7

6

<u>Chamberlain v. Augustine,</u>
172 Cal. 285 (1916) ................................................................................................................. 8

7

8

<u>Continental Car-Na-Var Corp. v. Moseley,</u>
24 Cal.2d 104  (1944) ............................................................................................................. 9

9

<u>Davis v. Advanced Care Techs. Inc.,</u>
2007 WL 2288298 (E.D. Cal. Aug. 8, 2007) .................................................................. 4, 5, 6, 7

10

11

<u>Estate of Darulis v. Garate,</u>
401 F.3d 1060 (9th Cir.2005)................................................................................................... 4

12

<u>In Re Estate of Ferdinand Marcos, Human Rights Litigation,</u>
25 F.3d 1467 (9th Cir. 1994)................................................................................................... 12

13

14

<u>Faw, Casson, & Co. v. Cranston,</u>
375 A.2d 463 (Del. Ch. 1977).................................................................................................. 5

15

<u>Frame v. Merrill Lynch, Pierce, Fenner & Smith,</u>
20 Cal. App. 3d 668 (1971) ......................................................................................... 4, 5, 6, 8, 9

16

17

<u>Gilder v. PGA Tour, Inc.,</u>
936 F.2d 417 (9th Cir. 1991) .................................................................................................. 12

18

<u>Howard v. Babcock,</u>
6 Cal. 4th 409 (1993) .......................................................................................................... 7, 8

19

20

<u>KGB, Inc. v. Giannoulas,</u>
104 Cal. App. 3d 844 (1980).................................................................................................. 5, 6

21

<u>Knowles-Zeswitz Music, Inc. v. Cara,</u>
260 A.2d 171 (Del. Ch. 1969).................................................................................................. 5

22

23

<u>Latona v. Aetna U.S. Healthcare, Inc.,</u>
82 F. Supp. 2d 1089 (C.D. Cal., 1999) ..................................................................................... 6

24

<u>Metro Traffic Control, Inc. v. Shadow Traffic Network,</u>
22 Cal. App. 4th 853 (1994) ............................................................................................. 5, 6, 7

25

26

<u>Moss, Adams & Co. v. Shilling,</u>
179 Cal. App. 3d 124, 130 (1986)........................................................................................ 9, 11

27

<u>Muggill v. Reuben H. Donnelley Corp.</u>
62 Cal. 2d 239 (1965) ..................................................................................................... 5, 7, 8, 9

28

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**Nedlloyd Lines B.V. v. Super. Ct. of San Mateo County,**
   3 Cal. 4th 459 (1992) .................................................................................... 4, 5

**Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,**
   204 F.3d 867 (9th Cir. 2000) ........................................................................ 4, 10

**Roland Machinery Co. v. Dresser Industries,**
   749 F.2d 380 (7th Cir.1984) ............................................................................. 12

**Sports Form Inc. v. United Press Int'l Inc.,**
   686 F.2d 750 (9th Cir. 1982) .............................................................................. 3

**Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,**
   240 F.3d 832 (9th Cir.2001) ............................................................................... 4

**Treasure Valley Potato Bargaining Ass'n v. Ore-Ida Foods, Inc.,**
   497 F.2d 203 (9th Cir. 1974) ............................................................................. 12

**Ware v. Merrill Lynch, Pierce, Fenner & Smith,**
   24 Cal. App. 3d 35 (1972) ............................................................................... 6, 8

**Statutes**

Cal. Bus. Prof. Code § 16600 ................................................................................ 7
California's Uniform Trade Secret Act, Cal. Civ. Code § 3426, et seq. ....................... 10

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**NOTICE OF MOTION AND MOTION**

TO DEFENDANT AND ITS ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT on August 22, 2008, at 9:00 a.m. or as soon thereafter as may be heard, in Department 2, 17th Floor, the Honorable Jeffrey S. White presiding, in the above entitled Court at 450 Golden Gate Ave., San Francisco, California, Plaintiff Charles Jason Moran will, and hereby does, move the Court for issuance of a preliminary injunction.

Plaintiff seeks an order enjoining the operation of Sections 2(d)(iii) and 2(d)(iv) of the 2007 and 2008 Restricted Stock Agreement between Plaintiff and Defendant, and Sections 2(c)(ii), 2(c)(iii) and 2(c)(v) of the 2006 Restricted Stock Agreement between Plaintiff and Defendant.

This motion is based on this notice of motion and motion, as well as the accompanying memorandum of law and points of authorities, the Complaint and accompanying exhibits, the Declaration of Charles Jason Moran and accompanying exhibits, and the Declaration of Matthew C. Helland and accompanying exhibits, and such further evidence as may be provided prior to or at the time of hearing.

## I. __INTRODUCTION__

Plaintiff Charles Jason Moran ("Moran" or "Plaintiff") is a former employee of Defendant whose employment with Defendant ended earlier this year. As a part of his compensation from Defendants, Moran earned Restricted Shares of Piper Jaffray Stock. Under certain Restricted Stock Agreements between Moran and Defendant, Defendant has the purported right to cancel Moran's shares unless he signs an agreement not to compete. The agreements also contain a non-solicitation provision. Moran contends that these provisions are void and unenforceable under California law. Moran therefore comes before this Court seeking a preliminary injunction preventing Defendant from canceling his restricted shares before the legality of the agreements is resolved. Because there is a very high likelihood the provisions are void under California law, and because Moran will suffer great harm that cannot be compensated in money damages if Piper Jaffray enforces the forfeiture agreement, Moran's request for a preliminary injunction should be granted.

1       Although Moran generally must arbitrate his claims through the Financial Industry

2  Regulatory Authority ("FINRA"), FINRA arbitration rules allow the Court to decide this motion.

3  (See Helland Decl. Exh. 3.)  Upon a decision on Plaintiffs' request for a preliminary injunction,

4  Moran with withdraw this action and proceed in arbitration, as provided for by FINRA rules.

5       **II. <u>STATEMENT OF ISSUES TO BE DECIDED</u>**

6       The issue to be decided in this motion is whether Plaintiff is entitled to a preliminary

7  injunction enjoining the operation of Sections 2(d)(iii) and 2(d)(iv) of the 2007 and 2008

8  Restricted Stock Agreement between Plaintiff and Defendant, and Sections 2(c)(ii), 2(c)(iii) and

9  2(c)(v) of the 2006 Restricted Stock Agreement between Plaintiff and Defendant.

10       **III. <u>FACTUAL BACKGROUND</u>**

11       Moran began working for Piper Jaffray as an investment banker in April of 1999.

12  (Compl. ¶ 3.)  Moran periodically entered into yearly Restricted Stock Agreements with

13  Defendant (the "Agreements").  (See, e.g., Compl. Exhs. A-C.)  The format of the agreement

14  changed slightly in 2007.  (See Id.)  The Agreements discuss how and when an employee's

15  restricted stock shares will vest.  (See Id.)  The Agreements also explain the ways in which the

16  restricted shares can be forfeited.  (Id.)  Under the 2007 and 2008 Agreements, an employee's

17  restricted stock shares can be forfeited if the employee fails to sign a Post-Termination

18  Agreement with Defendant upon leaving employment.  (Compl. Exhs. B & C, Section 2(d).)  The

19  contemplated Post-Termination Agreement obliges Moran to refrain from engaging in certain

20  prohibited activities, such as ". . . becom[ing] connected as an officer, employee, partner, director,

21  consultant, independent contractor, or otherwise with a Talent Competitor . . . ."  (Id. at Section

22  2(d)(iv).)  A Talent Competitor is defined as:

23       any corporation, partnership, limited liability company or other business

24       association, organization or entity or person of any kind whatsoever that engages

25       in the investment banking, securities brokerage or investment management

26       business, including, but not limited to, investment banks, sell-side broker dealers,

27       mergers and acquisitions or strategic advisory firms, merchant banks, hedge funds,

28       private equity firms, venture capital firms, asset managers and investment advisory

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

1    firms.

2    (Id.)  The 2006 Agreement has a slightly different non-compete provision, giving Piper Jaffray

3    the right to cancel Plaintiff's shares if he gains subsequent employment in a position "involv[ing]

4    duties, responsibilities or expertise similar to that of the Employee's position of employment with

5    the Company or an Affiliate at the time of the Employee's termination of such employment,"

6    (Compl. Exh. A, Section 2(c)(iii)), or becomes employed by a "competing business." (Id., section

7    2(c)(ii).) (collectively with Compl. Exhs. B & C, Section 2(d)(iv), the "non-compete provisions").

8    All three agreements contain provisions restricting Moran's contact with Defendant's current or

9    former customers and clients.  (See Compl. Exh. A, Section 2(c)(v); Compl. Exhs. B, C, Section

10   2(d)(iii).)  The Agreements also contain a choice of law provision which states that the law of

11   Delaware will govern the Agreement.  (Compl. Exhs. A-C, Section 11.)

12       Moran's employment with Piper Jaffray ended on April 14, 2008.  (Compl. ¶ 8.)  Moran

13   has not signed a Post Termination Agreement with Piper Jaffray.  (Id. at ¶ 9.)  Moran estimates

14   that he has approximately $392,800 in restricted shares that are subject to forfeiture at the hands

15   of Defendant.  (Moran Decl. ¶ 3.)  In this motion, he seeks a preliminary injunction enjoining

16   Defendant from canceling those shares.

17       On July 15, Moran filed his request for arbitration with the Financial Industry Regulatory

18   Authority ("FINRA"), f/n/a National Association of Securities Dealers ("NASD").  (Helland

19   Decl. ¶ 2.)  Moran pursues his request for a preliminary injunction pursuant to FINRA Code of

20   Arbitration Procedure for Industry Disputes § 13804, allowing a party otherwise required to

21   submit to FINRA arbitration to pursue a temporary injunctive order from any court of competent

22   jurisdiction.  (See Helland Decl. Exh. 3.)

23   **IV.    ARGUMENT**

24       **a.  PRELIMINARY INJUNCTION STANDARD**

25       The decision to issue a preliminary injunction rests in the sound discretion of the trial

26   court.  Sports Form Inc. v. United Press Int'l Inc., 686 F.2d 750, 752 (9th Cir. 1982).  A party

27   moving for a preliminary injunction must show either (1) a combination of probable success on

28   the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the

-3-
**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

1    balance of hardships tips sharply in favor of the movant. <u>Stuhlbarg Int'l Sales Co., Inc. v. John D.</u>

2    <u>Brush & Co., Inc.</u>, 240 F.3d 832, 839 (9th Cir.2001).  "These two formulations represent two

3    points on a sliding scale in which the required degree of irreparable harm increases as the

4    probability of success decreases." <u>Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.</u>, 204

5    F.3d 867, 874 (9th Cir. 2000).  Here, the Court should grant Plaintiffs' request for a preliminary

6    injunction because there is a very high likelihood Plaintiff will succeed on the merits and there is

7    the possibility of irreparable injury without a preliminary injunction.

8              **b.   THERE IS A HIGH LIKELIHOOD THAT PLAINTIFF WILL SUCCEED**

9                      **ON THE MERITS**

10                   **i.   <u>California Law Will Apply To The Agreement.</u>**

11          It is proper for this Court to analyze the agreements under California law, notwithstanding

12   the choice of law provision selecting Delaware law.  In diversity cases, federal courts must apply

13   the choice-of-law rules of the forum state. <u>Estate of Darulis v. Garate</u>, 401 F.3d 1060, 1062 (9th

14   Cir.2005).   Several California courts have invalidated choice of law provisions purporting to

15   apply out-of-state law in similar employment agreements.  <u>See</u>, <u>e.g.</u>, <u>Application Group, Inc. v.</u>

16   <u>Hunter Group, Inc.</u>, 61 Cal. App. 4th 881, 902 (1998) (holding that California law would govern a

17   challenge to a non-compete under Section 16600, even though the agreement stated Maryland law

18   would apply); <u>Frame v. Merrill Lynch, Pierce, Fenner & Smith</u>, 20 Cal. App. 3d 668, 673 (1971)

19   (applying California law to invalidate a forfeiture clause under Section 16600, notwithstanding

20   the fact that the contract specified that New York law would govern the agreement); <u>Davis v.</u>

21   <u>Advanced Care Techs. Inc.</u>, 2007 WL 2288298, at *9 (E.D. Cal. Aug. 8, 2007) (invalidating a

22   choice of law provision selecting the law of Connecticut and applying California law in a case

23   involving a non-compete agreement).

24          In <u>Application Group</u>, the appellate court set forth a framework for analyzing choice-of-

25   law provisions in employment contracts.  First this Court must determine whether the chosen

26   jurisdiction has a "substantial relationship" to the parties and transaction in question, and whether

27   there is a "reasonable basis" for the choice of law provision. <u>Application Group</u>, 61 Cal. App. 4th

28   at 897 (citing <u>Nedlloyd Lines B.V. v. Super. Ct. of San Mateo County</u>, 3 Cal. 4th 459, 466

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

1    (1992)).  When the employer is incorporated in the chosen state, the "substantial relationship" and

2    "reasonable basis" requirements are satisfied.  Id. at 897.  The court must next examine whether

3    the selected jurisdiction's law is contrary to a fundamental state policy.  Id.  If there is no

4    fundamental conflict, California applies the chosen state's law.  Id.  If there if a fundamental

5    conflict with California state policy, the court next determines whether California has a materially

6    greater interest than the state selected in the choice of law provision.  Id.  If California has a

7    materially greater interest than the designated state, the choice of law provision will not be

8    enforced.  Id.

9                          *1.   Delaware Law Is Contrary To Fundamental California State*

10                              *Policy.*

11           Under Frame, Application Group, and Davis, the choice of law provision in the

12   Agreement should not be enforced.  Plaintiff concedes that the "substantial relationship" and

13   "reasonable basis" tests are met, because Piper Jaffray is incorporated in Delaware.  See

14   Application Group, 61 Cal. App. 4th at 884; Davis, 2007 WL 2288298, at *4.  However,

15   Delaware's law regarding agreements not to compete is contrary to the fundamental public policy

16   of California.

17           Delaware courts will uphold non-compete agreements as long as the covenants are

18   reasonable in scope and time and are designed to protect the employer's economic interests.  See,

19   e.g, Faw, Casson, & Co. v. Cranston, 375 A.2d 463, 465 (Del. Ch. 1977); Knowles-Zeswitz

20   Music, Inc. v. Cara, 260 A.2d 171, 174-75 (Del. Ch. 1969).  In California, on the other hand,

21   "every contract by which anyone is restrained from engaging in a lawful profession, trade, or

22   business of any kind is to that extent void."  Cal. Bus. Prof. Code § 16600 (hereafter "section

23   16600").  Pursuant to this policy, non-compete agreements are void in California unless the

24   restraints are necessary to protect employer trade secrets.  Muggill v. Reuben H. Donnelley Corp,

25   62 Cal. 2d 239, 242 (1965); Metro Traffic Control, Inc. v. Shadow Traffic Network, 22 Cal. App.

26   4th 853, 859 (1994).

27           Several courts have held that section 16600 represents a "strong public policy" of the state

28   of California.  See, e.g., Application Group, 61 Cal. App. 4th at 900; KGB, Inc. v. Giannoulas,

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

104 Cal. App. 3d 844, 848 (1980); <u>Ware v. Merrill Lynch, Pierce, Fenner & Smith</u>, 24 Cal. App. 3d 35, 43 (1972); <u>Frame</u>, 20 Cal. App. 3d at 673; <u>Latona v. Aetna U.S. Healthcare, Inc.</u>, 82 F. Supp. 2d 1089, 1093 (C.D. Cal., 1999). In accordance with section 16600, California courts recognize that "the interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interest of the employers." <u>Metro Traffic Control, Inc.</u>, 22 Cal. App. 4th at 860 (internal citation omitted). Courts have also recognized that employees generally occupy a weak bargaining position vis-a-vis their employers. The <u>KGB, Inc.</u> court stated: "The average, individual employee has little but his labor to sell . . . . He is often in urgent need of selling it and in no position to object to boiler plate restrictive covenants placed before him to sign . . . . His individual bargaining power is seldom equal to that of his employer." <u>KBG, Inc.</u>, 104 Cal. App. 3d at 849.

Because California's public policy against restraints of trade is so strong and fundamental, California courts regularly reject choice of law provisions in employment agreements such as Plaintiff's. <u>See</u> e.g., <u>Application Group</u>, 61 Cal. App. 4th at 902; <u>Frame</u>, 20 Cal. App. 3d at 673; <u>Davis</u>, 2007 WL 2288298, at *9. This Court must follow <u>Application Group</u> and <u>Frame</u> and recognize that Delaware law is contrary to fundamental California public policy regarding restraints of trade and employee mobility.

### *2. California Has A Greater Interest Than Delaware In This Case Because The Agreement Will Be Enforced In California And Plaintiff Lived And Worked In California.*

Non-compete agreements like the one at issue here preclude California employers from being able to effectively compete for talented employees like Plaintiff. <u>See</u> <u>Application Group</u>, 61 Cal. App. 4th at 901. The <u>Application Group</u> court stated that section 16600 is "a statement of California public policy which ensures California employers will be able to compete effectively for the most talented, skilled employees in their industries, wherever they reside." <u>Id.</u> In <u>Application Group</u>, the court applied California law notwithstanding the fact that <u>the plaintiff had not resided in or visited California while she was employed by defendant</u>. <u>Id.</u> at 887. The Court found that enforcing the choice of law provision would improperly "allow an out-of-state

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

1    employer/competitor to limit employment and business opportunities in California." Id. at 902.

2    The non-compete clause in this case will have the same affect on California employers.  If

3    Plaintiff is required to sign the contemplated non-compete agreement, Delaware law will allow

4    Defendant to improperly limit employment and competition within the state of California.

5        Although Application Group provides the basis for striking the choice of law provision,

6    there is even greater justification for applying California law in this case.  Here, Plaintiff lived

7    and worked in California during his entire employment with Defendant.  (Moran Decl. ¶ 2.)

8    Plaintiff interviewed for his job in San Francisco and he worked out of Piper Jaffray's office in

9    San Francisco his entire tenure with the company.  (Id.)  This case is therefore similar to Davis,

10   where the court determined that California had a materially greater interest in the case's outcome

11   because the plaintiff resided in California during the tenure of his employment and he continued

12   to reside in California after his employment with the defendant ended.  See Davis, 2007 WL

13   2288298, at *7.  This Court should come to the same conclusion here.  Plaintiff has lived and still

14   lives in California, subject to California law, and worked for Defendant in California for 9 years.

15   As the Davis Court recognized, California law should govern the agreement.

16       Because Delaware law is contrary to a fundamental pubic policy of California and

17   California has a materially greater interest in the matter, California law should apply to the

18   dispute.

19                    **ii.  The Forfeiture Provision Of The Non-Competes Is An Unlawful**

20                         **Restraint Of Trade Under Section 16600.**

21       The non-compete provisions of the Agreements are void under California law because

22   they unlawfully restrict Plaintiff's ability to earn a living in his chosen profession.  California has

23   a policy of favoring open competition.  Howard v. Babcock, 6 Cal. 4th 409, 416 (1993).  Section

24   16600 prohibits non-compete agreements that place a restraint on trade, unless the restraint is

25   necessary to prevent disclosure of trade secrets.  Cal. Bus. Prof. Code § 16600; Muggill, 62 Cal.

26   2d at 242; Metro Traffic Control, 22 Cal. App. 4th at 859.  The non-compete provisions violate

27   California law because they restrain Plaintiff "from engaging in a lawful profession, trade, or

28   business."  Cal. Bus. Prof. Code § 16600.

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

1    Section 16600 and the public policy considerations underlying that statute apply to

2    agreements that place a price on competing.  See Howard, 6 Cal. 4th at 416.  When a former

3    employee is forced to forfeit earned benefits upon gaining subsequent employment, a restraint is

4    placed on the former employee's ability to engage in lawful business.  Muggill, 62 Cal. 2d at 243;

5    see also Chamberlain v. Augustine, 172 Cal. 285, 288 (1916) (holding that an agreement which

6    required defendant to pay plaintiff $5,000 in liquidated damages in order to work with a

7    competing company was an invalid restriction on trade).  Therefore, forfeiture clauses in non-

8    compete agreements are invalid as unlawful restraints on trade and employee mobility.  See, e.g.,

9    Muggill, 62 Cal. 2d at 243; Ware, 24 Cal. App. 3d at 43; Frame, 20 Cal. App. 3d at 673.[1]

10    The non-compete provisions are void under Muggill, Ware and Frame.  They broadly and

11    unlawfully inhibit Plaintiff from engaging in lawful business in violation of section 16600.  The

12    Agreement language at issue is quite similar to the agreement language used in Ware and Frame.

13    The provision in both Ware and Frame stated: "A Participant who . . . voluntarily terminates his

14    employment with the Corporation . . . and engages in an occupation which is . . . competitive with

15    the Corporation . . . shall forfeit all rights to any benefits already due or to become due . . . ."

16    Ware, 24 Cal. App. 3d at 39; Frame, 20 Cal. App. 3d at 673 n.1.  Here, Section 2(d)(iv) of the

17    2007 and 2008 Agreement at issue calls for a forfeiture of restricted stock shares if the employee

18    becomes employed with a Talent Competitor, which is defined as:

19        any corporation, partnership, limited liability company or other business

20        association, organization or entity or person of any kind whatsoever that engages

21        in the investment banking, securities brokerage or investment management

22        business, including, but not limited to, investment banks, sell-side broker dealers,

23        mergers and acquisitions or strategic advisory firms, merchant banks, hedge funds,

24        private equity firms, venture capital firms, asset managers and investment advisory

25    

26    [1]Ware and Frame are especially instructive in the instant case, because both cases involved
     former employees of Merril Lynch, a competitor of Piper Jaffray.  Ware, 24 Cal. App. 3d at 43;
27    Frame, 20 Cal. App. 3d at 673.  Both cases invalidated agreements by which the employee would
     have forfeited his profit sharing benefits upon gaining subsequent employment with a competitor.
28    Ware, 24 Cal. App. 3d at 43; Frame, 20 Cal. App. 3d at 673.  California principals of unfair
     competition dictate that the law should be applied equally to competing businesses.

-8-

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

1    firms.

2    (Ex. A, Section 2(d)(iv).)  If he signs such an agreement, Plaintiff would be totally foreclosed

3    from working in the securities, investment banking, and asset management fields.[2]

4        Ware and Frame construe agreements very similar to Plaintiff's.  The cases were between

5    employees in Plaintiff's industry and a defendant who competes with Piper Jaffray.  Under these

6    cases, Plaintiff has a very high likelihood of success.

7                    iii.  **The Client Non-Solicitation Agreements Are Unenforceable Because**

8                          **They Are Not Necessary To Protect Trade Secrets.**

9        "Antisolicitation covenants are void as unlawful business restraints except where their

10    enforcement is necessary to protect trade secrets."  Moss, Adams, & Co. v. Shilling, 179 Cal.

11    App. 3d 124, 130 (1986).  "[I]n the absence of a protectable trade secret, the right to compete

12    fairly outweighs the employer's right to protect clients against competition from former

13    employees."  American Credit Indemnity Co. v. Sacks, 213 Cal.App.3d 622, 634 (1989).

14        Section 2(d)(iii) of the 2007 and 2008 Agreements, and Section 2(c)(v) of the 2006

15    agreement would prevent Plaintiff from contacting any person or business who was a customer or

16    client of Defendant in the past three years.  (See Compl. Exhs. A- C.)  The provisions are void

17    and unenforceable under Section 16600 because they are not "necessary to protect trade secrets."

18    Moss, Adams & Co., 179 Cal. App. 3d at 130.  The provisions would prevent Plaintiff from

19    working with a client of Defendant from three years ago, who now would like to work with a

20    different bank more suited to the client's current needs; that is an illegal restraint on trade.  Under

21    Moss, Adams & Co. and American Credit, Defendant is only allowed to prevent Plaintiff from

22    using "trade secret customer lists" to compete.  Moss, Adams & Co., 179 Cal. App 3d at 130,

23    American Credit Indemnity Co., 213 Cal. App. 3d at 634.  Where "the names and addresses of

24    persons, firms and corporations using the type of products sold by plaintiff are *commonly known*

25    *to the trade*," "free competition prevails."  American Credit Indemnity Co., 213 Cal. App. 3d at

26    633-34 (quoting Continental Car-Na-Var Corp. v. Moseley, 24 Cal.2d 104, 108 (1944) (emphasis

27    _____

28    [2] Similarly, the 2006 agreement forecloses Plaintiff from taking any employment position
      whatsoever that involves "duties, responsibilities or expertise similar to" Moran's position with
      Defendant. (Exh. A.)

                                    -9-

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

1   in original).[3]  Because the non-solicitation provisions are not restricted to the use of "trade secret

2   customer lists," they are overbroad and unenforceable.

3        The non-solicitation provisions are not necessary to protect Defendant's trade secrets

4   because other provisions of the agreements accomplish that accomplish that purpose.  See Compl.

5   Exhs. B & C, sections 2(d)(i); Compl. Exh. A, section 2(c)(i) (prohibiting the use, disclosure, or

6   misappropriation of trade secrets).  Putting aside, for the purposes of this motion, the question of

7   whether these provisions are overbroad under California's Uniform Trade Secret Act ("CUTCA,"

8   Cal. Civ. Code § 3426, et seq.)[4] the trade secret sections of the agreements protect Defendants'

9   trade secrets to the fullest extent allowable under California law.   To the extent the non-

10  solicitation provisions seek to do something more, they are overbroad and unenforceable.  See

11  Moss, Adams & Co., 179 Cal. App 3d at 130, American Credit Indemnity Co., 213 Cal. App. 3d

12  at 634.  Plaintiff has a high likelihood of success in challenging the non-solicitation provisions.

13       **c.  THE COURT SHOULD GRANT PLAINTIFF'S MOTION BECAUSE**

14          **THERE IS THE POSSIBILITY OF IRREPARABLE INJURY.**

15       Plaintiff has shown a very high likelihood of success on the merits.   Therefore, his

16  showing of irreparable harm need not be as strong as it would if his chances of success were

17  minimal.  See Prudential Real Estate, 204 F.3d at 874.  Because Plaintiff will suffer significant

18  irreparable injury if Defendant cancels his stock, the Court should grant his request for a

19  preliminary injunction.

20       *1.  Plaintiff Will Suffer A Greater Degree Of Harm Than Will*

21          *Defendant If An Injunction Is Not Issued.*

22       Defendant's enforcement of these agreements will cause Plaintiff great harm.  Under the

23  2007 and 2008 Agreements Defendant purportedly has the right to forfeit Plaintiff's restricted

24  stock shares at any time, because Plaintiff has not signed the contemplated post-termination

25

26  [3] Similarly, the 2006 agreement prevents Plaintiff from soliciting "any customers, clients or
    accounts of the Company or any Affiliate or otherwise seeks to divert such customers, clients or
27  accounts away from the Company or any Affiliate."  (Exh. A, section 2(c)(v).)

28  [4] Plaintiff does not waive any arguments he may have under the CUTCA regarding these
    agreements.  For the purposes of this motion, it is sufficient to say that the agreement protects
    Defendant's trade secrets to the extent allowable under the law.

-10-

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

1    agreement.  Likewise, Defendant has the purported right under the 2006 agreement to cancel

2    Plaintiffs' shares if he works in a similar capacity with another employer.  Plaintiff stands to lose

3    approximately $392,800 worth of stock if Defendant cancels his shares.  (Moran Decl. ¶ 3.)

4         By contrast, Defendant will not suffer any significant harm if the Court issues a

5    preliminary injunction.   The law of unfair competition will adequately protect Defendant's

6    legitimate business interests, such as trade secrets and confidential information – even without a

7    contractual provision.   See Moss, Adams, & Co., 179 Cal. App. 3d at 130.   Further, the

8    agreements contain other provisions protecting Defendants' trade secrets.   (See Compl. Exhs. B

9    & C, sections 2(d)(i); Compl. Exh. A, section 2(c)(i).)  Thus, Defendant is protected, and will

10   continue to be protected, to the fullest extent allowable under California law, even if the Court

11   grants this injunction.

12        Further, enforcing the provision (i.e., canceling Plaintiffs' stock) does nothing to further

13   Defendant's legitimate interests.  If Defendant cancels the stock it will be in the same position

14   relative to Plaintiff that it is in now.  The Court should therefore enjoin Defendant from taking

15   this irreversible action until the enforceability of the agreements is finally determined.

16                  ***2.   The Harm To Plaintiff Will Be Irreparable***

17        Once Defendant cancels Plaintiffs' shares, the shares cannot be reissued.  Defendant's

18   long-term incentive plan provides for the issuance of stock to employees, officers, consultants and

19   directors. (Helland Decl. Ehx. 1, section II(m).)  Plaintiff does not currently fall into any of these

20   categories, nor does he have any intention of becoming an employee, officer, consultant or

21   director of Defendant.  Therefore, if Defendant decides to exercise its purported forfeiture rights,

22   the action will be permanent and irreversible.

23        Money damages cannot afford Plaintiff an adequate remedy for the loss of this stock.

24   With possession of the stock, Plaintiff can spread his tax obligation over three years as his shares

25   vest.  If he receives a lump sum settlement, he loses the benefit of tax deferral.  Additionally, the

26   value of Plaintiff's shares presently grows on a tax deferred basis.  If he receives damages, that

27   money cannot grow tax-deferred in Piper Stock.  Finally, any settlement Plaintiff would receive

28   down the road would be taxed completely as ordinary income.  Plaintiff would therefore lose the

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

1    benefit of the capital gains tax rate on any post-vesting increase in share price.

2          Moreover, although Plaintiff would be free to purchase Piper Jaffray stock on the open

3    market with damages he may receive, he would be forced to buy these shares with after-tax

4    dollars.  This would result in the purchase of fewer shares. This effect is exacerbated as Plaintiff

5    believes that Defendant' stock is trading at a low value (Moran Decl. ¶ 5.) and that there is a

6    reasonable probability that stock price on the vesting date will be greater than the stock price on

7    which the stock was granted.  Plaintiff cannot go back in time to purchase shares at the price at

8    which they would otherwise vest.

9          Likewise, it is impossible to place a present-day value on unvested shares that will vest

10   years in the future.  Over the last 4 years, the price of Piper Jaffray stock has ranged from below

11   $30 a share to over $70 a share.  (Helland Decl. Exh. 2.)  The inherent risks, and rewards, of stock

12   ownership rest on the premise that future returns are unknown and subject to influence by a host

13   of worldwide factors.  It is impossible to predict what the share price will be when Plaintiff's

14   shares eventually vest.  Likewise, Plaintiff cannot predict today how he will dispose of his shares

15   when they eventually do vest.  When, as here, the nature of Plaintiffs' injuries makes damages

16   especially difficult to calculate, damages are inadequate.  See In re Estate of Ferdinand Marcos,

17   Human Rights Litigation, 25 F.3d 1467, 1479 (9th Cir. 1994) (citing Roland Machinery Co. v.

18   Dresser Industries, 749 F.2d 380 (7th Cir.1984)); see also Gilder v. PGA Tour, Inc., 936 F.2d

19   417, 423 (9th Cir. 1991) ("where the threat of injury is imminent and the measure of that injury

20   defies calculation, damages will not provide a remedy at law"); Treasure Valley Potato

21   Bargaining Ass'n v. Ore-Ida Foods, Inc., 497 F.2d 203, 218 (9th Cir. 1974) ("[O]ne reason for

22   issuing an injunction may be that damages, being immeasurable, will not provide a remedy at

23   law.").

24         Because money damages cannot replace the tax and timing advantages inherent in stock

25   ownership, the Court should grant Plaintiff's request for a preliminary injunction.

26   **V.    CONCLUSION**

27         For the foregoing reasons, Plaintiff respectfully requests that the Court issue a preliminary

28   injunction enjoining the operation of Sections 2(d)(iii) and 2(d)(iv) of the 2007 and 2008

1   Agreements, and Sections 2(c)(ii), 2(c)(iii) and 2(c)(v) of the 2006 Agreement.

2

3   Dated: July 17, 2008                    NICHOLS KASTER & ANDERSON, LLP

4                                           By:     s/Matthew C. Helland
5                                                   Matthew C. Helland

6                                           NICHOLS KASTER & ANDERSON, PLLP
                                            Attorneys for Plaintiffs and the Putative Class
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

11

Charles Jason Moran,

              Plaintiff,

12

13

v.

14

Piper Jaffray & Co.,
d/b/a Piper Jaffray,

15

16

          Defendant.

17

18

**CASE NO: 08-cv-3188 JSW**

**[proposed] ORDER GRANTING**
**PRELIMINARY INJUNCTION**

Date: August 22, 2008
Time: 9:00 a.m.
Place: Department 2, 17th Floor
Judge: Hon. Jeffrey S. White

19

20

21

22

23

24

25

26

27

28

1  This matter having come before the Court on Plaintiff's motion for a preliminary injunction, and

2  having reviewed the submissions of the parties and considered the parties' oral arguments, and for

3  good cause shown, THE COURT HEREBY GRANTS Plaintiff's motion for a preliminary

4  injunction.  Defendant IS HEREBY ENJOINED from canceling, or in any way causing the forfeit

5  of, Plaintiff's restricted shares of stock in Piper Jaffray & Co., until such time as a court or

6  arbitration panel shall adjudicate the parties' rights under the parties' Restricted Stock

7  Agreements.

8

9  IT IS SO ORDERED.

10

11  Dated; _____

12                                                                                    _____
                                                                                      Honorable Jeffrey S. White
                                                                                      United States District Court Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**-1-**

**[proposed] ORDER GRANTING PRELIMINARY INJUNCTION**