```
1  GORDON C. YOUNG, CASB NO. 158100
   Gordon.Young@kyl.com
2  JULIE A. KOLE, CASB NO. 203681
   Julie.kole@kyl.com
3  ANNE MORIARTY, CASB No. 251803
   Annie.moriarty@kyl.com
4  KEESAL, YOUNG & LOGAN
   450 Pacific Avenue
5  San Francisco, California 94133
   Telephone:  (415) 398-6000
6  Facsimile:  (415) 981-0136

7  Attorneys for Defendant
   PIPER JAFFRAY & CO.
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES JASON MORAN, | Case No. CV 08-3188 JSW |
| Plaintiff, | |
| vs. | **DEFENDANT PIPER JAFFRAY & CO.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| PIPER JAFFRAY & CO., d/b/a PIPER JAFFRAY, | |
| Defendant. | Date: October 10, 2008<br>Time: 9:00 a.m.<br>Place: Department 2, 17th Floor<br>Judge: The Hon. Jeffrey S. White |

KYL_SF464848 v.2

DEFENDANT PIPER JAFFRAY & CO.'S OPPOSITION TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION—CV 08-3188 JSW

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. PROCEDURAL BACKGROUND ........................................................................ 3

III. LEGAL ARGUMENT ........................................................................................... 5

    A. PLAINTIFF IS NOT ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF. .................................................................................................. 5

        1. Plaintiff Cannot Establish Irreparable Harm Where Money Damages Would Fully Compensate Him. ..................... 5

        2. Because The Shares At Issue Will Not Vest Until Next Year (At The Earliest) There Is No Threat Of Imminent Harm. ................................................................. 8

        3. The Forfeiture Provisions Are Enforceable And Thus Plaintiff Cannot Show He Is Likely To Succeed On The Merits. ............................................................................ 9

            a. If California Law Applies, Plaintiff Cannot Show The Likelihood Of Success On The Merits. ................... 9

            b. Delaware Law Applies To The Agreements And Under Delaware Law The Agreements Are Enforceable. ................................................................. 10

    B. PLAINTIFF IS MERELY ATTEMPTING TO GAIN A TACTICAL ADVANTAGE IN ARBITRATION BY SEEKING A PRELIMINARY DETERMINATION ON THE MERITS OF HIS CLAIM IN THIS COURT. .......................................................................................................... 11

IV. CONCLUSION .................................................................................................... 12

1

**TABLE OF AUTHORITIES**

2

3
Cases

4  Bajorek v. Int'l Bus. Machines Corp.,
      191 F.3d 1033 (9th Cir. 1999) ..................................................................................... 2, 9

5  Borey v. Nat'l Union Fire Ins. Co. of Pitt., Penn.,
6     934 F.2d 30 (2d Cir. 1991) .............................................................................................. 6

7  Boughton v. Socony Mobil Oil Co.,
      231 Cal. App. 2d 188 (1964) ........................................................................................... 9

8  Caribbean Marine Serv. Co., Inc. v. Baldridge,
9     844 F.2d 668 (9th Cir. 1988) ....................................................................................... 5, 8

   Faw, Casson & Co. v. Cranston,
10    Del.Ch., 375 A.2d 463 (1977) ....................................................................................... 10

11 Freedom Holdings, Inc. v. Spitzer,
      408 F.3d 112 (2nd Cir. 2005) .......................................................................................... 6
12
   Gilder v. PGA Tour, Inc.,
13    936 F.2d 417 (9th Cir. 1991) ....................................................................................... 7, 8

14 In re Estate of Ferdinand Marcos, Human Rights Litig.,
      25 F. 3d 1467 (9th Cir. 1994) ......................................................................................... 7
15
   In Re Series 7 Broker Qualification Exam Litigation,
16    510 F.Supp. 2d 35 (D.D.C. 2007) ................................................................................... 3

17 Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,
      634 F.2d 1197 (9th Cir. 1980) ......................................................................................... 6
18
   Lydo Enter., Inc. v. City of Las Vegas,
19    745 F.2d 1211 9th Cir. 1984) ..................................................................................... 6, 11

20 Manhattan Cable Telev., Inc. v. Cable Doctor, Inc.,
      824 F. Supp. 34 (S.D.N.Y. 1993) .................................................................................... 6
21
   Mazurek v. Armstrong,
22    520 U.S. 968 (1997) ........................................................................................................ 5

23 McCann Surveyors, Inc. v. Evans,
      611 A.2d 1 (Del. Ch. 1969) ........................................................................................... 10

24 Midgett v. Tri-County Metro. Transp. Dist. of Oregon,
      254 F.3d 846 (9th Cir. 2001) ........................................................................................... 8
25
   Nedlloyd Lines B.V. v. Superior Court,
26    3 Cal. 4th 459 (1992) .................................................................................................... 10

27 Roesgen v. Amer. Home Prod. Corp.,
      719 F.2d 319 (9th Cir. 1983) ......................................................................................... 10
28

| | |
|---|---|
| 1 | Sampson v. Murray, |
| 2 | 415 U.S. 61 (1974) .................................................................................................. 6 |
| | Siegel v. LePore, |
| 3 | 234 F.3d 1163 (11th Cir. 2000) .............................................................................. 6 |
| 4 | Simula, Inc. v. Autoliv, Inc., |
| 5 | 175 F.3d 716 (9th Cir. 1999) .................................................................................. 5 |
| | Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., |
| 6 | 240 F.3d 832 (9th Cir. 2001) .................................................................................. 5 |
| 7 | Treasure Valley Potato Bargaining Assoc. v. Ore-Ida Foods, Inc., |
| | 497 F. 2d 203 (9th Cir. 1974) ................................................................................. 8 |
| 8 | Tucker Anthony Realty Corp. v. Schlesinger, |
| 9 | 888 F.2d 969 (2d Cir. 1989) ................................................................................... 7 |
| 10 | Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n, |
| | 259 F.2d 921 (D.C. Cir. 1958) ................................................................................ 6 |

**Statutes**

Business and Professions Code Section 16600 ................................................................... 9

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 187 (1971) .............................................. 10

**Rules**

FINRA's Rules of Arbitration ............................................................................................. 2

FINRA Rule 13804 ....................................................................................................... 3, 4

Defendant PIPER JAFFRAY & CO. ("Defendant" or "Piper Jaffray") hereby submits this Opposition to Plaintiff's Motion for Preliminary Injunction ("Motion").

## I.

## INTRODUCTION

During his employment with Piper Jaffray, Plaintiff CHARLES JASON MORAN ("Plaintiff" or "Mr. Moran") participated in Piper Jaffray's Long Term Incentive Plan (the "Plan"). In doing so, he knowingly and willingly agreed to the provisions governing the Plan, including, but not limited to, the forfeiture provisions relating to the contingent interests in restricted stock he was granted. Under the terms of the Plan, employees receive a portion of their compensation in the form of contingent interests in restricted stock and/or stock options. These awards vest over a three-year period and are designed to serve as an incentive to motivate and retain employees. By the clear terms of the plan, they are contingent upon continued employment with the company. Indeed, the Restricted Stock Agreements executed by Plaintiff (the "Agreements") explicitly state that "*if the Employee remains continuously employed ... by the Company or an Affiliate*, then the Restricted Shares will vest in the numbers and on the dates specified in the Vesting Schedule at the beginning of this Agreement." (emphasis added) (see, Dkt. 20, Section 2(a) of Exhibits "A", "B" and "C" attached to Plaintiff's First Amended Complaint for Declaratory Relief ("FAC").) As was clearly explained in writing to Piper Jaffray employees who participated in the Plan, they had no vested right or entitlement to any such awards unless and until the expiration of the vesting period. Plaintiff accepted his award with a clear understanding of the vesting and forfeiture provisions.

Plaintiff signed three separate Restricted Stock Agreements. Per the first Agreement, the shares do not vest until February 21, 2009. (See, Dkt. 20, Plaintiff's FAC and Exhibit "A", page 1, attached thereto.) Per the second Agreement, the shares do not vest until February 15, 2010. (See, Dkt. 20, Plaintiff's FAC and Exhibit "B", page 1, attached thereto.) Per the third Agreement, the shares do not vest until

May 15, 2011. (See, Dkt. 20, Plaintiff's FAC and Exhibit "C", page 1, attached thereto.) Plaintiff's employment ended on April 14, 2008 – before any of the vesting dates. Although clearly entitled under the explicit terms of the Agreements, Piper Jaffray has not yet cancelled any of Plaintiff's restricted stock.

Plaintiff now requests that this Court enjoin Piper Jaffray from cancelling his contingent interests in restricted stock, arguing that, under California law, the Agreements' provisions are void. However, Plaintiff is not entitled to the extraordinary relief he requests for at least the following reasons.

First, because money damages would fully compensate him for any of his alleged losses, Plaintiff cannot establish that he will be irreparably harmed without injunctive relief.

Second, because the shares will not vest until next year, at the earliest, there is no threat of imminent harm.

Third, Plaintiff cannot show that he is likely to succeed on the merits of his claim. The Agreements are enforceable under prevailing Ninth Circuit authority. See, Bajorek v. Int'l Bus. Machines Corp., 191 F.3d 1033 (9th Cir. 1999). Further, the Agreements contain a Delaware choice of law provision and, under Delaware law, provisions such as those contained in the Agreements are enforceable.

Fourth, as fully set forth in Defendant's (1) Petition to Compel Arbitration and (2) Motion to Stay Proceedings ("Petition") and Reply Brief in Support of Petition, (see, Dkt. 6 & 30), all of Plaintiff's claims (including his claim for preliminary injunctive relief) should be compelled to Financial Industry Regulatory Authority ("FINRA") binding arbitration. Plaintiff signed a Form U-4 Uniform Application For Securities Industry Registration or Transfer ("Form U-4") containing an admittedly enforceable arbitration agreement[1] that governs *all* of the claims in his Motion and Complaint for

---

[1] The arbitration clause is contained in the Form U-4's signed by Plaintiff. By reference, it incorporates the FINRA's Rules of Arbitration. This brief will refer to the Form U-4 arbitration clause and the incorporated FINRA Rules of Arbitration together as the "arbitration agreement."

1  Declaratory Relief. (See, Dkt. 7, Form U-4 attached to the Declaration of Ann McCague
2  in Support of Defendant's Petition ("McCague Decl.") as Exhibit "1".). Plaintiff's sole
3  argument in opposing Defendant's Petition is that FINRA Rule 13804 permits him to
4  seek preliminary injunctive relief in this Court. (See, Dkt. 25, Plaintiff's Opposition to
5  Defendant's Petition.) Although FINRA Rule 13804 requires it, Plaintiff's Statement of
6  Claim ("SOC"), filed with FINRA, fails to request permanent injunctive relief. Plaintiff's
7  attempt to circumvent his admittedly binding arbitration agreement by relying on a
8  Rule with which he did not comply constitutes another basis to deny his request.
9      For these reasons, Piper Jaffray respectfully requests that Plaintiff's
10  Motion be denied.

## II.

## PROCEDURAL BACKGROUND

    On December 14, 1999, Plaintiff executed a Form U-4 which is required to be executed by every broker who joins a member firm of FINRA (formerly known as the New York Stock Exchange ("NYSE") and National Association of Securities Dealers, Inc. ("NASD").[2] (See, Dkt. 7, Form U-4 attached to the McCague Decl. as Exhibit "1.") By executing this Form U-4, and pursuant to applicable law, Plaintiff agreed to arbitrate any dispute which arose between him and Defendant.

    Despite this binding arbitration agreement, on June 19, 2008, Plaintiff filed his Complaint for Declaratory Relief and Motion in California state court against Piper Jaffray. In his Motion, Plaintiff requested that the Court enjoin Piper Jaffray from enforcing the forfeiture provision in Restricted Stock Agreements he signed.

    On June 2, 2008, Defendant filed its Notice of Removal, removing the case to this Court. (See, Dkt. 1.) The following day, Defendant filed its Petition. (See,

---

[2] On July 30, 2007, the NASD and the NYSE consolidated their regulatory functions and changed their names jointly to FINRA. See, In Re Series 7 Broker Qualification Exam Litigation, 510 F.Supp. 2d 35, 36 n.1 (D.D.C. 2007).

- 3 -  KYL_SF464848 v.2

DEFENDANT PIPER JAFFRAY & CO.'S OPPOSITION TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION—CV 08-3188 JSW

Dkt. 5.) On July 15, 2008 (nearly two weeks after Defendant filed its Petition), Plaintiff filed a SOC against Piper Jaffray with FINRA, implicitly recognizing that his claims are the subject of a binding arbitration agreement. Piper Jaffray's counsel received Plaintiff's SOC on July 16, 2008. (See, Dkt. 31, Supplemental Declaration of Anne Moriarty in Support of Petition ("Supp. Moriarty Decl."), ¶ 5.) In the SOC, Plaintiff alleges, among other things, a cause of action for Declaratory Relief. (See, Dkt. 31, Plaintiff's SOC attached to the Supp. Moriarty Decl. as Exhibit "1".) Plaintiff's Declaratory Relief cause of action relates to this Motion in that it seeks a determination from the Arbitrators that the forfeiture provision of the above-mentioned Agreements are unenforceable under California law. (See, Dkt. 31, Plaintiff's SOC, ¶ 57 attached to the Supp. Moriarty Decl. as Exhibit "1".) Although Plaintiff informed FINRA that he had moved for a preliminary injunction pursuant to FINRA Rule 13804 in state court and that the case has been removed, Plaintiff's SOC failed to request permanent injunctive relief from the FINRA Arbitrators. (See, Dkt. 31, Plaintiff's SOC, ¶ 38 and prayer for relief pgs. 11-12, attached to the Supp. Moriarty Decl. as Exhibit "1".)

On July 17, 2008, Plaintiff then re-filed his Motion in this Court asserting essentially the same arguments as his state court preliminary injunction motion. (See, Dkt. 22.) Plaintiff again alleges that if Piper Jaffray enforces the forfeiture provisions, he "stands to lose approximately $392,800 worth of stock". (See, Plaintiff's Motion, pg. 11, *ll.* 2-3 and Declaration of Charles Moran in Support of Motion For Preliminary Injunction ("Moran Decl."), ¶ 3.) The hearing on Plaintiff's Motion is set for October 10, 2008—nearly four months after Plaintiff initially requested injunctive relief in state court.

## III.

## LEGAL ARGUMENT

### A. PLAINTIFF IS NOT ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF.

The United States Supreme Court recognizes that a preliminary injunction is "an extraordinary and drastic remedy." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). A preliminary injunction may be issued only if the moving party can establish (1) the likelihood of success on the merits and a significant threat of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the movant. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 (9th Cir. 2001). Further, Plaintiff "must *demonstrate* immediate threatened harm as a prerequisite to injunctive relief." Caribbean Marine Serv. Co., Inc. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original).

Plaintiff argues that the Court should grant his Motion because there is a (1) possibility of irreparable injury without a preliminary injunction and (2) very high likelihood of success on the merits of his claim that the forfeiture provisions of the Agreements are unenforceable. (See, Plaintiff's Motion, pg. 4, *ll.* 5-7.) As discussed below, Plaintiff cannot establish either prong of this test. In addition, Plaintiff cannot establish that the threat of purported harm is immediate. Thus, Piper Jaffray respectfully requests that Plaintiff's Motion be denied.

#### 1. Plaintiff Cannot Establish Irreparable Harm Where Money Damages Would Fully Compensate Him.

Unless Congress provides otherwise, a preliminary injunction "may only be granted when the moving party has demonstrated a significant threat of irreparable injury, irrespective of the magnitude of the injury." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 725 (9th Cir. 1999). Significantly, "even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, *standing alone*, make preliminary injunctive relief improper." Siegel v. LePore, 234 F.3d

- 5 -                                                                   KYL_SF464848 v.2

1163, 1176 (11th Cir. 2000) (emphasis added); see, also, Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2nd Cir. 2005) [irreparable injury is "the single most important prerequisite for the issuance of a preliminary injunction".]

Monetary injury is not normally considered irreparable damage for the purpose of ruling on a preliminary injunction. Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980). In Nat'l Football League, preliminary relief was properly denied because the alleged harm – lost revenues, diminution of property value and loss of substantial goodwill – could all be remedied by a monetary award. Id.

In Sampson v. Murray, 415 U.S. 61, 90 (1974), quoting, Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958), the court stated: "Mere injuries, however substantial, in terms of money, time and energy necessarily expended ... are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." The court further stated that absent a "genuinely extraordinary situation," a wrongfully discharged employee's lost income and damaged reputation do not constitute irreparable injury. Id.

Likewise, in Lydo Enter., Inc. v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir. 1984), the Ninth Circuit reversed the District Court's issuance of a preliminary injunction where (as here) the Plaintiff had alleged purely monetary injuries. Because the alleged loss was calculable and compensable by an award of damages if the Plaintiff ultimately prevailed, a preliminary injunction was held to be improper. Id. Other jurisdictions are in accord. See, e.g., Manhattan Cable Telev., Inc. v. Cable Doctor, Inc., 824 F. Supp. 34, 38 (S.D.N.Y. 1993) ["The possibility of monetary loss does not present a risk of irreparable harm."]; accord, Borey v. Nat'l Union Fire Ins. Co. of Pitt., Penn., 934 F.2d 30, 34-35 (2d Cir. 1991) ["Monetary loss alone will generally not amount to irreparable harm."]; Tucker Anthony Realty Corp. v. Schlesinger, 888

1 | F.2d 969, 975 (2d Cir. 1989) ["A monetary loss will not suffice unless the movant
2 | provides evidence of damage that cannot be rectified by financial compensation."]
3 |      If Piper Jaffray cancels Plaintiff's contingent interests in restricted shares
4 | of stock, the amount of damages Plaintiff will purportedly suffer is easily quantifiable.
5 | In fact, Plaintiff himself readily computes the value of his claim as a monetary figure:
6 | "Plaintiff stands to lose approximately $392,800 worth of stock if Defendant cancels his
7 | shares." (See, Plaintiff's Motion, pg. 11, ll. 2-3; Moran Decl., ¶ 3.) Thus, Plaintiff cannot
8 | establish that the harm he alleges he will suffer is irreparable.
9 |      Plaintiff's meritless assertion that without a preliminary injunction he will
10 | lose tax and/or timing advantages inherent in stock ownership and that these damages
11 | cannot be rectified by financial compensation are wholly unsupported by any evidence.
12 | Plaintiff's self-serving declaration that he "believes" that Piper Jaffray's stock is trading
13 | at a low price does not support the claim that Plaintiff's purported damages defy
14 | calculation. (See, Moran Decl., ¶ 5.) The only other evidence Plaintiff offers is a print-
15 | out from Yahoo! Finance showing the range of Piper Jaffray's stock price over the last
16 | four years. (See, Declaration of Matthew Helland in Support of Motion, ¶ 4 and
17 | Exhibit "2" attached thereto.) The fact that Piper Jaffray's stock price has fluctuated
18 | does not mean that Plaintiff's claim is unquantifiable or immeasurable.
19 |      Plaintiff's position is also unsupported by the case law he cites in his
20 | Motion. For example, Plaintiff cites In re Estate of Ferdinand Marcos, Human Rights
21 | Litig., 25 F. 3d 1467, 1469 (9th Cir. 1994). There, the court addressed the question of
22 | whether a preliminary injunction should be available due to the impending insolvency of
23 | the defendant or when the defendant has engaged in a pattern of dissipating assets to
24 | avoid judgment. Id. at 1480. Plaintiff has presented no evidence establishing that
25 | Piper Jaffray is at risk of insolvency or dissipating assets. Thus, the Marcos case is
26 | inapplicable.
27 |      Similarly, Plaintiff's reliance on Gilder v. PGA Tour, Inc., 936 F.2d 417, 423
28 | (9th Cir. 1991), is misplaced. There, eight professional golfers who used golf clubs with

- 7 -    KYL_SF464848 v.2

DEFENDANT PIPER JAFFRAY & CO.'S OPPOSITION TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION—CV 08-3188 JSW

1   U-shaped groves and the manufacturing company sought a preliminary injunction
2   enjoining the implementation of a PGA Tour rule banning the clubs. <u>Id.</u> at 418. The
3   district court issued a preliminary injunction, finding that the professionals would be
4   irreparably harmed if they were forced to change clubs because they would be at a
5   competitive disadvantage. <u>Id.</u> at 423. The Court of Appeals affirmed, in part, because
6   the harm—competitive disadvantage—defied calculation. <u>Id.</u>  A golfer's competitive
7   disadvantage, which is clearly difficult to quantify, is simply incomparable to the
8   purported tax advantages of holding stock.

9         Finally, Plaintiff cites <u>Treasure Valley Potato Bargaining Assoc. v. Ore-Ida
10  Foods, Inc.</u>, 497 F. 2d 203, 218 (9th Cir. 1974). There, the court held that potato
11  producers were ***not entitled*** to an injunction against potato growers' bargaining
12  associations, which allegedly violated antitrust laws. <u>Id.</u>  The court found that, not only
13  was the proffered evidence of past damages based on conjecture and speculation, but
14  that the very existence of any further threat of injury was speculative and conjectural.
15  <u>Id.</u>

16        Following discovery and an arbitration hearing, in the unlikely event
17  Plaintiff prevails on his claim, he can be fully compensated by an arbitration panel with
18  a money damage award. Thus, Plaintiff cannot establish irreparable harm and his
19  Motion should be denied on this basis alone.

20      **2.    Because The Shares At Issue Will Not Vest Until Next Year (At
21            The Earliest) There Is No Threat Of Imminent Harm.**

22        Plaintiff "must *demonstrate* immediate threatened harm as a prerequisite
23  to injunctive relief." <u>Caribbean Marine Serv. Co., Inc. v. Baldridge</u>, 844 F.2d 668, 674
24  (9th Cir. 1988) (emphasis in original). Establishing a risk of irreparable harm in the
25  indefinite future is not enough. The harm must be shown to be imminent. <u>Midgett v.
26  Tri–County Metro. Transp. Dist. of Oregon</u>, 254 F.3d 846, 850–851 (9th Cir. 2001).
27        Plaintiff signed three separate Restricted Stock Agreements. Per the
28  Agreements, the earliest Plaintiff's contingent interest in Piper Jaffray's restricted stock

- 8 -   KYL_SF464848 v.2

will vest is next year (February 21, 2009). The latest Plaintiff's contingent interest will vest is May 15, 2011—over two years from now. Even if Piper Jaffray canceled the shares, Plaintiff would not be damaged until those shares were to vest. Plaintiff himself recognizes this fact: "I will realize ordinary income from these shares when they vest." (See, Moran Decl., ¶ 4.) Given that Plaintiff's shares are not scheduled to vest until next year at the earliest, his contention that he will suffer great hardship if a preliminary injunction is not issued now rings hollow. Accordingly, Plaintiff cannot demonstrate immediate threatened harm and his Motion should be denied.

### 3. The Forfeiture Provisions Are Enforceable And Thus Plaintiff Cannot Show He Is Likely To Succeed On The Merits.

The second prong of the Preliminary Injunction analysis requires Plaintiff to demonstrate that he is likely to succeed on the merits of his claim. Plaintiff cannot meet this requirement for two reasons. First, Plaintiff cannot show he is likely to succeed on the merits where the Ninth Circuit, applying California law, has held similar agreements to be enforceable. Second, Delaware law applies to the Agreements pursuant to a choice-of-law provision. Under Delaware law, the Agreements are fully enforceable.

#### a. If California Law Applies, Plaintiff Cannot Show The Likelihood Of Success On The Merits.

Plaintiff cannot establish, under California law, that it is likely that the Arbitrators will ultimately determine that the forfeiture provisions in the agreements are void. Similar agreements have been upheld by the 9th Circuit applying California law. See, Bajorek v. Int'l Bus. Machines Corp., 191 F.3d 1033, 1041 (9th Cir. 1999).[3] Business and Professions Code Section 16600 does not make all restrictions on competition unenforceable. Id. at 1040, citing, Boughton v. Socony Mobil Oil Co., 231

---

[3] On the day of this filing, the California Supreme Court issued its decision in Edwards v. Arthur Andersen, Civil Docket No. S147190 (August 7, 2008). In its decision, the Court was critical of the holding of Bajorek. Although counsel for Defendant has not had time to fully review this decision, the Edwards holding may impact this case. If the Court so requests, Defendant would be willing to submit further briefing on this issue.

Cal. App. 2d 188 (1964). Accordingly, under California law, Plaintiff cannot establish the likelihood of success on the merits.

      **b.    Delaware Law Applies To The Agreements And Under Delaware Law The Agreements Are Enforceable.**

Piper Jaffray is incorporated in Delaware and the choice of law clause in the Restricted Stock Agreements at issue calls for the application of Delaware law. (See, Dkt. 20, Section 11 of Exhibits "A", "B" and "C" attached to Plaintiff's FAC.) In determining the effect of choice of law provisions, California looks to the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 187 (1971), which presumptively applies the law chosen by the parties. See Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 462 (1992) (explaining that choice of law rules derived from California decisions and the Restatement "reflect strong policy considerations favoring the enforcement of freely negotiated choice-of-law clauses"). Courts sitting in California have rejected the application of the limited exceptions to this presumption and have consistently emphasized the fact that, if a substantial relationship exists among the state, the transaction and the parties, the contractual selection of law should be upheld. Roesgen v. Amer. Home Prod. Corp., 719 F.2d 319, 321 (9th Cir. 1983).

The parties chose Delaware law in their contract, and Plaintiff concedes that Delaware has a substantial relationship to both the transaction and the parties. Delaware courts routinely enforce agreements containing similar provisions as the Agreements. In McCann Surveyors, Inc. v. Evans, 611 A.2d 1 (Del. Ch. 1969), a Delaware court held that a covenant not to compete "was a valid term of defendant's employment agreement." Id. at 4; see also Faw, Casson & Co. v. Cranston, Del.Ch., 375 A.2d 463, 469 (1977)[covenant not to compete enforceable]. Accordingly, Plaintiff cannot and has not shown a likelihood of success on the merits under the law applicable to his claim.

- 10 -

KYL_SF464848 v.2

DEFENDANT PIPER JAFFRAY & CO.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION—CV 08-3188 JSW

B. **<u>PLAINTIFF IS MERELY ATTEMPTING TO GAIN A TACTICAL ADVANTAGE IN ARBITRATION BY SEEKING A PRELIMINARY DETERMINATION ON THE MERITS OF HIS CLAIM IN THIS COURT</u>**.

"A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action." <u>Lydo Enter., Inc. v. City of Las Vegas</u>, 745 F.2d 1211, 1213-14 (9th Cir. 1984) (citations omitted.) The hearing on Plaintiff's Motion is set for October 10, 2008—nearly four months after Plaintiff initially requested injunctive relief in state court. Plaintiff has not objected to this hearing date, nor has he sought a Temporary Restraining Order seeking to maintain the *status quo* until the hearing date.

Clearly, Plaintiff is not concerned with actually obtaining an injunction to prevent ***immediate***, ***irreparable*** harm. In fact, Plaintiff's delay demonstrates that the alleged harm is neither immediate nor irreparable. Rather, Plaintiff seeks—without the benefit of discovery or a hearing—to gain a tactical advantage by obtaining a preliminary determination from this Court that he is likely to succeed on the merits of his claim that he can bring with him to the Arbitration.

Plaintiff's contingent interests in restricted shares of Piper Jaffray's stock are not scheduled to vest until next year ***at the earliest*** and thus he will not suffer any immediate hardship if the preliminary injunction is not issued. In contrast, the grant of a preliminary injunction will cause Defendant great hardship. It will suspend Defendant's right to cancel Plaintiff's stock pursuant to the Agreements at issue without the benefit of any discovery or a hearing on the merits –interfering with Defendant's right to contract.

As discussed above, preliminary injunctive relief is simply not appropriate in this case. Further, as set forth fully in Defendant's Petition and Reply Brief in Support of Petition (see, Dkt. 6 & 30), Plaintiff's claims (including his request for preliminary injunctive relief) are the subject of a binding arbitration agreement.

The question of whether the non-compete provisions are enforceable should be left to the Arbitrators.

## IV.

## CONCLUSION

For the reasons set forth herein, Defendant respectfully requests that Plaintiff's Motion for Preliminary Injunction be denied.

DATED: August 7, 2008

_____
GORDON C. YOUNG
JULIE A. KOLE
ANNE MORIARTY
KEESAL, YOUNG & LOGAN
Attorneys for Defendant
PIPER JAFFRAY & CO.